INHABITANTS OF SACO *versus* WENTWORTH *&* als.

Of the meaning of the phrase, " the law of the land," as used in the constitution of Maine.

§ 6, article 1, of that instrument, guarantees to the accused, in all criminal prosecutions, "that he shall have a speedy, public and impartial trial, and except in trials by martial law, or impeachment, by a jury of the vicinity. He shall not be deprived of his life, liberty, property or privileges, but by judgment of his peers or the law of the land."

§ 8, of same article, guarantees that " no person, for the same offence, shall be twice put in jeopardy of life or limb."

An Act of the Legislature which renders it difficult for the accused to obtain the privilege of a trial by jury, beyond what public necessity requires, impairs individual rights, and is inconsistent with the constitutional guaranty.

So if an Act of the Legislature requires *conditions*, for the purpose of prosecuting a *trial by jury*, it is opposed to the spirit of the constitution, and so far as it deprives one of this means of protection it is void.

By c. 211, § 6, of the Acts of 1851, it is required that if any person claim an appeal from a judgment rendered against him, by any judge of a municipal court, or justice of the peace, on trial of such action or complaint, for unlawfully selling spirituous or intoxicating liquors, *before his appeal shall be allowed,* he shall also in every case give a *bond* with two other good and sufficient sureties, running to the town or city where the offence was committed, in the sum of two hundred dollars, that he will not during the pendency of such appeal, violate any of the provisions of this Act.

This *requirement* impairs the right secured to the accused, by article 1, § 6, of the constitution, and is, therefore inoperative, and void.

And a *bond* given under that requirement is contrary to the provisions of the constitution, and also void.

ON REPORT from *Nisi Prius,* WELLS, J., presiding.

DEBT, on a bond given by defendants to the inhabitants of the town of Saco, for $200, conditioned that the principal obligor should not violate any of the provisions of c. 211 of Acts of 1851, during the pendency of an appeal by him made, from the sentence of the Municipal Court of said Saco, on a conviction before that Court for selling spirituous liquors contrary to said Act.

The defendants pleaded the general issue, and filed a brief statement of their defence.

Plaintiffs, against the objections of the defendants, were allowed to read a copy of the record of the complaint and warrant, upon which Wentworth, the principal defendant,

was brought before the Municipal Court and tried; and the record of the judgment of that Court, by which it appeared he was convicted of the offence of selling spirituous liquor, and sentenced to pay a fine and costs of prosecution; from which sentence he appealed, and before the appeal was allowed, he was required to recognize in the manner prescribed by the statute and also to give the bond in suit, against the protest of defendants, that it was given under duress.

While that appeal was pending, it also appeared, that the principal obligor sold spirituous liquors in said Saco, not being an agent appointed for that purpose.

The case was taken from the jury and submitted to the Court.

*Shepley & Hayes*, for defendants, urged many objections to the maintenance of this action, but the view taken by the Court renders it unnecessary to refer to other than the constitutional objection.

The provision of the statute, under which this bond is required, is repugnant to the 6th § of Art. 1, of the constitution of Maine.

By necessary construction of this provision, in all criminal prosecutions, an appeal lies from the sentence of a justice of the peace, who tries without a jury, to some court having cognizance of the offence where a trial by jury may be had. *Johnson's case*, 1 Greenl. 230.

This right of appeal from the sentence of a justice of the peace, thus based upon the constitution, is *absolute, unqualified, unconditional,* necessarily so, because as it flows necessarily from the right to a trial by jury, and is an essential incident of that right, it must be coëxtensive with it. Being of this character, the Legislature has no power to change, qualify, abridge or encumber it with conditions, restrictions or any terms whatever.

By c. 76, § 3, of statutes of 1821, the Legislature seemed to have burthened the right of such an appeal by a condition, but when the statutes were revised, that provision was

repealed and one adopted in harmony with the constitution. R. S., c. 170, § 8. By that law the right of appeal is unburthened with any conditions whatever. A somewhat similar statute in Massachusetts has confirmed this construction. 9 Pick. 14; *Kendall* v. *Powers,* 4 Met. 553.

Any statute which assumes to withhold an appeal from the sentence of a justice in a criminal case, until the respondent complied with certain prescribed terms, — much more, any statute which makes such right of appeal depend upon certain conditions more or less onerous, to be performed by the accused within a certain limited time, recognizances and bonds with sureties more or less, prepared and filed within certain hours, conflicts directly with the constitutional right to a trial by jury, and is void.

The statute of 1846, restricting the sale of intoxicating drinks, c. 205, § § 6 and 7, provided for the recovery of penalties by action of debt or complaint, and declared that an appeal claimed by the defendants in either process from the judgment of the justice, should not be allowed, unless the defendant should within 48 hours (Sundays excepted,) after judgment, recognize with two good and sufficient sureties, in not less than $50, to prosecute his appeal, and pay all costs, fines or forfeitures that might be recovered against him upon a final disposition of the suit or complaint.

The Maine Law, as it is called, of 1851, contains an enlarged, and in the opinion of some, improved edition of this singular commentary upon constitutional rights, supposed to be improved because supposed to be endowed with more power in suppressing those troublesome guaranties of personal rights, trials by jury.

Now if the Legislature have the power to impose such restrictions and conditions upon the right of appeal, it may virtually destroy it wholly; and the right to a trial by jury may be regarded as an obsolete idea.

It may as well provide, that the recognizance shall be in the sum of $1000, or $100,000, with a good and sufficient surety to each dollar, and that the bond shall be for an indefinite

amount with as many more and *other* good and sufficient sureties, and conditioned that the defendant will not, during the pendency of the appeal, nor ever afterwards, violate any provision of law, common, statute, Mosaic, human or Divine, and that the recognizance and bond shall be given within one hour, or the appeal shall not be allowed.

Again, the provisions of this statute are repugnant to the 9th § of Art. 6, of the constitution, which provides that "excessive bail shall not be required." Requiring four separate sureties, each good and sufficient, is requiring *excessive bail.* Blackstone's Com. vol. 4, p. 350; *Greene* v. *Briggs & al.,* Law Reporter, March, 1853.

*Emery & Loring,* for plaintiffs.

The Declaration of Rights, Art. I, § 6, of the constitution, secures to the accused in criminal prosecutions a speedy, public and impartial trial by a jury of the vicinity; but the mode and conditions of such trial are matters of expediency purely, and are left to the wisdom of the Legislature exclusively.

1st. The 6th § of the 1st Art. of the constitution would be void, unless the Legislature, by an Act, provided for summoning a jury, and designated the Court to try cases. This then is a matter left to the discretion of the Legislature.

2d. The Legislature must adopt measures to secure the appearance of the accused at the Court to try him, either by arrest or by bonds and recognizances, else a prosecution would be unavailing and an appeal equivalent to an acquittal. This then is a matter left exclusively to the discretion of the Legislature.

3d. The accused, though clearly guilty, and fully proved to be so before the justice, is under strong inducements to appeal to another Court for delay merely, or else upon a calculation of the chances of final impunity, from the death of a witness, or from tampering with him, or procuring his absence before trial of the appeal; calculations made in liquor cases more than others. It is the duty of the Legislature to adopt provisions to counteract the advantage

of delay, to counterbalance this estimate of chances, and in some measure to test the sincerity of the culprit's claim of a trial by jury. · This then is the exclusive business of the Legislature.

4th. The amount depending may be so small as to make an appeal injurious alike to the State and party. And it is for the Legislature to fix the amount for which an appeal will lie, as they did in § 46, of the militia law of 1821, and in other cases. See *Mountfort* v. *Hall*, 1 Mass. 442.

The Court cannot interfere with these matters without usurpation of others' rights. Hence the authorities. *Flint river Steamboat Co.* v. *Foster*, 5 Greenl. 194, where it is said, " an Act of the Legislature clogging the right of trial by jury with onerous conditions will not be pronounced unconstitutional, unless it totally prostrates the right or renders it wholly unavailing to the party for his protection." The same Court says, that Courts are not at liberty to set aside a statute because it is *absurd* or *unreasonable*. *Kendall* v. *Kingston*, 5 Mass. 534; *Adams* v. *Howe*, 14 Mass. 345; *State* v. *Cooper*, 5 Blackford, 258.

The provisions of the 6th § of the Maine Law, are all of them fully supported by precedent and by the analogy of Legislative acts and common usage in Massachusetts and this State from time immemorial.

The Act of 1651, c. 6, (Colony Laws,) requires as conditions of allowing an appeal from the sentence of a justice of the peace the following, viz : —

1st. The accused must tender his appeal and put in security to prosecute the same to effect, and also to satisfy all damages within 12 hours.

2d. He must put in security also for his good behavior.

3d. He must pay for recording the appeal, and for its entry in Court. (N. B. He was afterwards required to pay jury fees.)

4th. He was required to give to the clerk of the Court the grounds and reasons of his appeal 6 days before the sitting of the Court appealed to.

5th. The appellant for neglect to prosecute his appeal with effect, besides the above, forfeited 40 shillings to the county.

The law regulating appeals from the District Court § § 13 to 17, c. 97, R. S., imposed a penalty on the party losing by his appeal in the name of double costs.

3. We say the bond is supported by the analogy of other laws now in force. The statute of Forcible Entry and Detainer, c. 128, R. S., requires the defendant, if he appeals, to recognize to pay reasonable intervening rent before his appeal can be allowed. § 4. It has generally been required by statute, and has always been customary to require the person convicted of any breach of the peace, before a justice, to recognize on allowing his appeal, to keep the peace and be of good behavior. See Kingsbury's Justice, and blank recognizances *passim*.

Is the requirement of the bond unreasonable? A man is accused, proved guilty and convicted of pursuing a business injurious to the morals, the happiness and the prosperity of the people of the town. He denies his guilt notwithstanding, and wishes for an opportunity to establish his innocence before a jury; is it unreasonable to require of him as a condition of allowing him the opportunity, that he shall not pursue that business while the case is pending? But whether reasonable or not, is a question for the Legislature, and not for the Court.

4. That the bond in suit was not given under duress. See *Watkins* v. *Baird*, 6 Mass. 511; *Richardson* v. *Duncan*, 3 N. H. 508; *Buck* v. *Atkinson*, 1 Bailey, 84.

TENNEY, J. — The bond in suit was given by the defendants, as one of the conditions, to obtain an appeal from a sentence to pay a fine of ten dollars, and costs of prosecution, awarded against the principal obligor by the Judge of the Municipal Court of the town of Saco, for a violation of the statute of 1851, c. 211, § 4, as required by § 6 of the same chapter. It appears from the judgment of the Court, which passed the sentence, that when the bond was executed,

the party convicted protested, that it was given under duress, for the purpose of securing a trial by jury.

The proposition in defence principally relied upon, and the only one which we propose to examine, is, that the requirement of the statute, for such a bond, as an indispensable condition of an appeal, in order to secure a trial by jury, is unconstitutional; and that the requirement and the bond are void. ·

" In all criminal prosecutions the accused shall have a right to be heard by himself and his counsel, or either, at his election; to demand the nature and cause of the accusation, and have a copy thereof; to have a speedy, public and impartial trial, and except in trials by martial law or impeachment, by a jury of the vicinity. He shall not be compelled to furnish or give evidence against himself, nor be deprived of his life, liberty, property or privileges, but by the judgment of his peers or the laws of the land. No person, for the same offence, shall be twice put in jeopardy of life or limb." Constitution of Maine, Art. 1, §§ 6 and 8.

" The law of the land," as used in the constitution, has long had an interpretation, which is well understood and practically adhered to. It does not mean an Act of the Legislature; if such was the true construction, this branch of the government could at any time take away life, liberty, property and privilege, without a trial by jury. The words just quoted from the constitution, are substantially the same as those found in chapter 29 of Magna Carta, from which they have been borrowed, and incorporated in the federal constitution, and most of the constitutions of the individual States. Lord Coke, in commenting on this chapter, says, "no man shall be disseized, &c. unless it be by the lawful judgment, that is, a verdict of equals, or by the law of the land; that is, (to speak once for all) by the due course and process of law." Coke, 2 Inst. 46. Blackstone says, 1 Com. 44, " and first it, (the law,) is a rule, not a transient sudden order from a superior, to or concerning a particular person; but something permanent, uniform and universal." Chancelor Kent

says, Lecture 24, p. 9, vol. 2, " it may be received as a self-evident proposition, universally understood and acknowledged, throughout this country, that no person can be taken, or imprisoned, or disseized of his freehold, or liberties, or estate, or exiled, or condemned, or deprived of life, liberty or property, unless ' by the law of the land or the judgment of his peers.' The words by the law of the land, as used in Magna Carta in reference to this subject, are understood to mean due process of law; that is, by indictment, or presentment of good and lawful men." Judge Story, in 3 Com. on Constitution, § 1783, says, " the clause, by law of the land, in effect affirms the right of trial according to the process and proceedings of the common law." *Dartmouth College* v. *Woodward,* 4 Wheat. 518.

By the process and proceedings of the common law, the accused has the right to know the charge in the whole form and substance against him, to contest it, and if not proved to the satisfaction of a jury, to demand an acquittal.

Every person prosecuted for crime, having the constitutional guaranty of a trial by jury, no law can be enacted, which shall take it away, or interpose such impediments, as unnecessarily or unreasonably to impair it. It is true, the public interests are not to be sacrificed by too great favor shown to those charged with crime. The State is entitled to a full vindication of its rights against such as are supposed to be transgressors of the criminal law. This necessarily imposes restraints upon the accused before a trial and conviction, and these may operate to his injury. He is to be treated as a suspected person, because accused, so far that his person may be present, when he shall be required to answer to the offence alleged. To secure his trial, the party prosecuted may be arrested; and although he is secure under the constitution from the obligation to give unreasonable bail, his penury and want of friends, perhaps in a strange land, or a loss of confidence in those who know him, by his previous misconduct, may lead to his imprisonment for a longer or shorter period, or to great trouble and expense in

procuring bail, which is entirely reasonable. This is one of the unfortunate incidents attending criminal prosecutions and trials for alleged offences. But this inconvenience and hardship does not necessarily take away or abridge the right of a trial by jury, under statutes which are not in conflict with the constitution.

The accused shall have a speedy trial by jury, and it is only by " the law of the land," as jurists have expounded the terms, that he can be deprived of life, liberty, property and privileges. It is the duty of the government to provide such tribunals, and give every proper opportunity for trials before them, consistent with the preservation of the public good, to all who demand them.

An Act of the Legislature, which takes away this privilege of trial by jury directly, is tyrannical and a palpable violation of the constitution; one which renders it difficult to obtain, beyond what public necessity requires, impairs individual rights and is inconsistent with this provision for their protection. If an Act requires conditions for the purpose of preventing a trial by jury, the spirit of such a provision is at war with the spirit of the constitution, and so far as it deprives one of this means of protection, it is void.

We think it would be regarded an anomaly in criminal legislation, if it should be provided, that upon an indictment of a grand jury, against one for a crime, the trial should be by the Court, unless the accused should demand a trial by jury, and should, as a prerequisite for obtaining it, be compelled to give a bond with good and sufficient sureties, in a large penal sum, conditioned to be void, if he should abstain from the commission of all offences against the laws for a given period, longer or shorter. It could not be contended, that such a condition would not be in opposition to the provision, that in prosecutions for crime, the accused should have a speedy trial by jury. Such a condition could have no reference to the public interest, that punishment should follow the conviction of the crime im-

puted. When charged with a criminal violation of law, the party so accused should be brought to trial, as soon as circumstances will render it expedient, but that he is thus charged is no good reason why he should be required to give security against the commission of future crime, more than any other person unsuspected of the design to break the laws, before he can have a trial by jury. A bond to prevent any infraction of the law, after the commencement of the prosecution, for its previous violation, and an appeal from a sentence of a justice of the peace therefor, may with equal propriety be required to extend to other and all crimes, and for an indefinite period of time.

When a demand for an appeal from a sentence awarded by a court, not attended by a jury, is made, it is 'one step only towards obtaining such a trial, if it is desired by the party accused; and conditions in no wise conducive to the great end of the government in punishing offenders for crimes supposed to have been committed, can be required at that time, with more propriety, than at a subsequent stage of the proceedings, when a jury is about to be empanneled. After an appeal from such a tribunal, the appellant stands as he does after an indictment by the grand jury of a court, when a jury of trials is to judge of his innocence or guilt. In both instances, he is shielded by the presumption of a freedom from guilt, till he shall be proved to have committed the offence whereof he is charged.

That such a bond as that now in suit, should be required as a condition to the privilege of a trial by jury, upon appeal, does impair the right secured by the constitution. The provision cannot be intended to bring an actual offender to trial and to punishment, but looks entirely to the future, with the design of its authors, to secure the public from danger, arising from criminal acts not yet committed, by presenting an inducement to one standing charged only, to give the supposed indemnity as the price of a trial before that tribunal, which the constitution proclaims that he shall always enjoy.

"No person, for the same offence, shall twice be put in jeopardy of life or limb." This is another great privilege secured by the common law, as well as by the constitution. "The meaning of it is, that the party shall not be tried a second time for the same offence, after he has once been convicted or acquitted of the offence charged, by a verdict of a jury, and judgment has passed thereon for or against him." 3 Story's Com. on Con. § 1781.

The bond in this case, as has been before remarked, refers exclusively to future violations of the statute referred to. If it has been broken, as it is admitted that it has been, by the principal obligor therein, he is amenable to the law in a criminal prosecution, precisely as he would be, if it had not been given. It furnishes no immunity whatever from a sentence for a crime. Upon such a sentence or other forfeiture, which may be awarded and decreed upon a sufficient complaint and trial, which may in every respect be according to the law and the constitution, he is still holden on the bond with his sureties, according to its terms. He is liable to a judgment for the penal sum therein; and it is very doubtful, whether in such a case, any rule could be applied, by which it should be determined, that execution should issue for a less sum than the judgment itself. If execution should be awarded against him under our general laws, applicable to judgments and executions, his property and his liberty are exposed, and by force of the execution, if served according to its precept, he will be deprived of one or the other. All this will result or may take place, if the provision which we are considering is valid according to the constitution, for the reason, that he was unable to have a trial by a jury according to the law of the land, till he had given the bond, and thereby laid himself liable to a punishment under it for offences which he had not committed when it was executed, but which he might afterwards commit, in addition to the fines and penalties and forfeitures, to which he might be exposed under the provisions of the Act itself.

In the trial of the action on the bond, which is really for

the offence of having violated some provision of the same statute referred to therein, after the bond was executed and while the appeal was pending, he has not the nature and the cause of the accusation set out in the full, clear, precise and technical form required by the constitution. So scrupulous have the courts of the common law always been, that the charge of crime should be so described, in the prosecution therefor, that any material defect has always operated in favor of the accused; and if any allegation, necessary to constitute the offence has been omitted, all amendments have been denied, and he has been discharged.

On the bond he is tried as in civil actions generally, without the securities which are thrown around him by the rules which prevail in their full integrity under a criminal accusation. He is exposed to a greater penalty perhaps than that which he would incur, if charged with the same offence as a crime.

We are reluctantly brought to the conclusion, that the provision in the statute of 1851, c. 211, § 6, requiring that a bond, such as is described, shall be given by a party sentenced by a justice of the peace or by a judge of a municipal or police court to pay a fine and costs, as one of the conditions before an appeal can be allowed, is in violation of the provisions of the constitution of this State, which have been referred to, and that the provision itself is inoperative and void. *Greene* v. *Briggs & al.*, Law Reporter, March, 1853. *Plaintiffs nonsuit.*

SHEPLEY, C. J., and WELLS, HOWARD and APPLETON, J. J., concurred.