**OPINION OF THE JUSTICES of the Supreme Judicial Court given under the Provisions of Section 3 of Article VI of the Constitution.**

Supreme Judicial Court of Maine.

Questions Propounded by the Senate in an Order Dated April 25, 1975.

Answered May 16, 1975.

SENATE ORDER PROPOUNDING QUESTIONS

State of Maine

In the Year of Our Lord One Thousand Nine Hundred and Seventy-five

In Senate, April 25, 1975

Whereas, it appears to the Senate of the 107th Legislature that the following is an important question of law and that the occasion is a solemn one; and

Whereas, there is pending before the 107th Legislature in its Committee on Judiciary, a bill entitled, "AN ACT Creating the Maine Criminal Code," Senate Paper 113, Legislative Document 314 (Exhibit A) which in pertinent part the Committee has voted to amend via Committee Amendment "A" (Exhibit B); and

Whereas, the bill, as amended by Committee Amendment "A," proposes, among other things to repeal the Revised Statutes, Title 15, sections 451 and 1703; to make clear that Class A through Class C crimes and homicides in the first and 2nd degree are to be viewed and treated as "infamous" within the meaning of the Constitution, Article I, section 7 (i. e., requiring prosecution by indictment unless waived) while Class D and E crimes are to be viewed and treated as noninfamous (i. e., allowing for prosecution by indictment, information or complaint); and to provide that a sentence to the State Prison is possible for sentencing Classes D and E as well as for Classes A, B and C and homicides in the first and 2nd degree; and

Whereas, the constitutionality of sections 9 and 1252 of section 1 of the bill, as amended by Committee Amendment "A," has been questioned as it relates to the Constitution, Article I, section 7 and it is important that the Senate be informed as to the constitutionality of these proposed provisions; now, therefore, be it

Ordered, that the Justices of the Supreme Judicial Court are hereby respectfully requested to give to the Senate, according to the provisions of the Constitution, on its behalf, their opinion upon the following questions, to wit:

QUESTION #1:

Would sections 9 and 1252 of section 1 of Legislative Document 314, as amended by Committee Amendment "A" if enacted into law, violate the Constitution, Article I, section 7?

QUESTION #2:

Would a crime be "infamous" within the meaning of the Constitution, Article I, section 7, if, irrespective of the length of possible imprisonment, a conviction for that crime could potentially result in a sentence of imprisonment at the State Prison even though the maximum length of that sentence is less than one year?

STATE OF MAINE
SENATE
107TH LEGISLATURE

COMMITTEE AMENDMENT "A" to S. P. 113, L. D. 314, Bill, "AN ACT Creating the Maine Criminal Code."

Amend said Bill by striking out all of that part designated "§ 9." of section 1 and by striking out all of the comment under section 9 and inserting in place thereof the following:

'§ 9. Indictment and jurisdiction

Notwithstanding any other provision of law:

1. All proceedings for Class A, B and C crimes shall be prosecuted by indictment, unless indictment is waived, in which case prosecution may be by information; and

2. All proceedings for criminal homicide in the first degree and in the 2nd degree shall be prosecuted by indictment; and

3. The District Courts shall have jurisdiction to try Class D and E crimes and to bind over for the grand jury all other crimes.

Comment *

This section declares it to be the Legislature's judgment that the crimes it defines in the 3 most serious classes, plus the 2 most serious criminal homicides, are "infamous" within the meaning of the State Constitution's requirement that infamous crimes must be prosecuted by indictment. Subsection 3 provides the District Courts with the authority to try D and E crimes and to find probable cause and bind over for indictment criminal homicide in the first and 2nd degrees as well as Class A, B and C crimes.

Further amend said Bill in that part designated "§ 1252." of section 1 by striking out all of paragraph D of subsection 2 and inserting in place thereof the following:

'D. In the case of a Class D crime, the court shall set a definite period of less than one year; or'

Further amend said Bill by striking out all of section 2 and inserting in place thereof the following:

'Sec. 2. 15 MRSA §§ 2, 102, 341, 342, 451, 452, 751, 1701–A, 1703, 1741 to 1743 and 1842 are repealed.'

STATEMENT OF FACT

The purposes of this amendment are reflected in the comment which is included with the new section 9 contained in the amendment and to repeal section 1703 of Title 15 of the Revised Statutes and to reduce the maximum definite sentence for conviction of a Class D crime from one year to less than one year.

ANSWERS OF THE JUSTICES

To the Honorable Senate of the State of Maine:

In compliance with the provisions of Section 3 of Article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following answers to the Questions propounded on April 25, 1975.

QUESTION NO. I: Would sections 9 and 1252 of section 1 of Legislative Document 314, as amended by Committee Amendment "A" if enacted into law, violate the Constitution, Article I, section 7?

ANSWER: We answer in the negative.

QUESTION NO. II: Would a crime be "infamous" within the meaning of the Constitution, Article I, section 7, if, irrespective of the length of possible imprisonment, a conviction for that crime could potentially result in a sentence of imprisonment at the State Prison even though the maximum length of that sentence is less than one year?

ANSWER: We answer in the negative.

Although the Senate has propounded two questions, we find that they are directed in substance to a single constitutional issue.

The issue has arisen because prior decisions of the highest Court of this State have stated that crimes punishable by imprisonment in the State Prison are, for the purposes of Article I, Section 7 of the Constitution of Maine,[1] "infamous" and must be prosecuted by a grand jury indictment. Yet L.D. 314, as amended by Committee Amendment "A", if enacted into law, would (1) eliminate as determinative of the necessity of prosecution by the indictment of a grand jury that a crime is punishable by a sentence to the State Prison,[2] and (2) establish as the exclusive criterion of the crimes which "shall be prosecuted by indictment" the duration of the period of confinement by which the crime is punishable, to-wit: that the period of confinement can be one year or more.[3]

The key factor underlying our answers is the recognition that the prior references by the Law Court to a crime as "infamous" if it is punishable by imprisonment in the "State Prison" were intended to connote substantive content other than the features that the commitment is to the penal institution which bears the name "State Prison" and is common to the State as a whole. The true intendment was, rather, to identify specific types of punishments for criminal conduct to which a person, because committed to the "State Prison", becomes subject.[4]

---

1. Said Article I, Section 7 provides in part that:

   "No person shall be held to answer for a capital or infamous crime, unless on a presentment or indictment of a grand jury, except in cases of impeachment, or in such cases of offenses, as are usually cognizable by a justice of the peace, or in cases arising in the army or navy, or in the militia when in actual service in time of war or public danger."

2. This results insofar as under Section 1252 a person convicted of a Class "D" or a Class "E" crime can be sentenced to the State Prison regardless that the "definite period" of confinement for a Class "D" crime (by virtue of Committee Amendment "A") is "less than one year" and for a Class "E" crime "not to exceed six months."

3. This is the consequence of the provisions of Section 1251, those of revised Section 9 of Committee Amendment "A" and said Amendment's modification of the punishment for a "Class D crime" as "a definite period of less than one year . . . ."

4. The statement in State v. Vashon, 123 Me. 412, 123 A. 511 (1924) that a statutory felony is an infamous crime added nothing new in concept. It was merely a restatement in other terms of the "State Prison" criterion of "infamous" since, under R.S. 1916, Chapter 133 § 11 (now 15 M.R.S.A. § 451), "felony" was defined as including "every offense punishable by imprisonment in the State Prison."

These kinds of punishments were identified in Jones v. Robbins, 8 Gray (Mass.) *329, 349* (1857) as the subjection to

"solitary imprisonment, to have . . . hair cropped, to be clothed in conspicuous prison dress, . . . to hard labor without pay, to hard fare, coarse and meagre food, and to severe discipline."

By virtue of P.L.1971, Chapter 397 § 3 (now 34 M.R.S.A. § 701) the Maine State Prison has since 1971 been denied authority to utilize as punishments for criminal conduct either hard labor or solitary confinement. Because of this important modification, the penal institution which presently has the name "State Prison" and is "common to the entire State", is not the same institution, in terms of its punishment functions and powers, as the one in contemplation of the Law Court when it referred to a crime punishable by a sentence to the "State Prison" as "infamous."

We must conclude, therefore, that our present problem is essentially the same as that faced by the Massachusetts Court in 1857 when it decided Jones v. Robbins, supra, and established the foundational contours upon which both the Supreme Court of the United States and the Law Court of Maine had previously relied to give meaning to the concept of a crime as "infamous."

In Jones v. Robbins the Massachusetts Court reviewed the history of penological developments in the United States and noted the earlier use of the punishments of

"pillory, sitting on the gallows, cropping one or both ears, branding on one or both cheeks, with indelible ink, the letter T for thief, or B for burglar, whipping, setting in the stocks; . . ." (p. 348)

and the like. These were the kinds of punishments which by their degrading nature could readily be regarded as "infamous."

By 1857, however, these methods of punishment had been abolished. In the penology then current in Massachusetts confinement in a penal institution had become the essentially exclusive method of punishment (other than capital) for criminal conduct and, therefore, the Massachusetts Court was obliged to acknowledge that:

"This practically took away all the degrading and ignominious punishments formerly provided by law; . . . ." (pp. 348, 349)

Thus, the problem before the Massachusetts Court in 1857 was whether to hold that the then current penology had effectively eliminated the concept of "infamous" as the determinant of the constitutional necessity of prosecutions by grand jury indictment or to undertake to infuse "infamous" with a new substantive content reflecting the insights of the changed penological attitudes.

The Massachusetts Court adopted the latter approach. In so doing, the Court emphasized that

"the makers of the Constitution . . . intended to make a marked distinction between crimes of great magnitude and atrocity, and to secure every person against accusation and trial for them without the previous interposition of a grand jury in the first instance; . . . ." (p. 347)

Proceeding from this foundational view that the "infamous crime" concept, as determinative of the necessity of prosecution by a grand jury indictment, was calculated to differentiate the crimes of "magnitude" from those which are "minor and petty", the Massachusetts Court concluded in 1857 that the kinds of punishment for criminal conduct which were authorized to be imposed at the "State Prison" included, as the most salient, solitary confinement or hard labor, or both, and these specific punishments could fairly be

"substituted for all the ignominious punishments formerly in use; and, unless this is infamous, then there is now no

infamous punishment, other than capital." (p. 349)

It was on this basis that in Jones v. Robbins the Massachusetts Court held that a crime punishable by the punishments then authorized to be imposed at the State Prison is a crime for which the "punishment is infamous." (p. 349)

This interpretation of Jones v. Robbins was pointedly clarified in subsequent decisions of the United States Supreme Court. Ex Parte Wilson, 114 U.S. 417, 5 S.Ct. 935, 29 L.Ed. 89 (1884); United States v. Moreland, 258 U.S. 433, 42 S.Ct. 368, 66 L.Ed. 700 (1922). The decision in United States v. Moreland is most illuminating on the issue since the Court there held that regardless of whether confinement be at a State Prison or at another penal institution, so long as the institution is authorized to use hard labor as a punishment for the criminal conduct, a crime punishable by confinement at such institution is subject to "infamous" punishment and is, therefore, an "infamous" crime constitutionally required to be prosecuted by a grand jury indictment.

Insofar as the Maine decisions commencing with Butler v. Wentworth, 84 Me. 25, 24 A. 456 (1891) [5] are all derived from Jones v. Robbins, supra, as clarified in the subsequent United States Supreme Court decisions of Ex Parte Wilson and United States v. Moreland, they are properly interpreted to hold that the essential substance of the criterion fixing a crime as "infamous" is not that the particular penal institution to which confinement can be ordered bears the name "State Prison", or is "common to the whole State", but rather that such institution has authority to utilize specific modalities of punishment for criminal conduct,—i. e., hard labor or solitary confinement, or both.

As noted above, however, since 1971 there is no longer in Maine a penal institution, whether the State Prison or any other, authorized to punish for criminal conduct by resort to solitary confinement or hard labor. Hence, the prior statements of the Law Court are substantively inapplicable to present conditions, and we are now obliged—as was the Massachusetts Court in 1857—either to assert that there are presently no "infamous" crimes in Maine or to seek out other modalities of punishments which, presently, may be considered "infamous" as that concept

"may be affected by the changes of public opinion from one age to another." Ex Parte Wilson, supra, 114 U.S. at p. 427, 5 S.Ct. at p. 940.

■ Since we agree with the view of the Massachusetts Court in Jones v. Robbins, supra, that the concept of an "infamous" crime, as used in constitutional provisions mandating the necessity of prosecution by a grand jury indictment, was designed

"to make a marked distinction between crimes of great magnitude and atrocity"

and those which are "minor and petty", we conclude that there is presently available an adequate criterion to serve this purpose.

Continuously since the statutory revision of 1841 (R.S.1841, Chapter 167 §§ 2, 11) it has been a concomitant of the crimes punishable by confinement at hard labor or solitary confinement (as imposed at the State Prison) that the length of the confinement must be for a period of one year or more. Thus, for more than 130 years, public opinion in Maine has associated the punishments of confinement at hard labor or solitary confinement (as imposed at the State Prison) with those crimes punishable by confinement for a year or more.

---

5. These include, in addition to Butler v. Wentworth:

"State v. Vashon, 123 Me. 412, 413–415, 123 A. 511, 512–513 (1924); State v. Arris, 121 Me. 94, 115 A. 648 (1922); State v. Cram, 84 Me. 271, 24 A. 853 (1892)."

For this reason, it is our opinion that this standard, in terms of the potential length of confinement as one year or more, provides a criterion which sufficiently differentiates the crimes of magnitude from those which are minor and petty.

Accordingly, we conclude that under our current penology (1) the place of confinement is not a determinant of whether a crime is "infamous" within the meaning of Article I, Section 7 of the Constitution of Maine, and (2) the sole criterion thereof is the length of the period of confinement by which the crime is punishable, to-wit, that the crime can be punished by a confinement of one year or more.

■ Since L.D. 314, as amended by Committee Amendment "A", adheres to this principle, our opinion is that its provisions are consistent with Article I, Section 7 of the Maine Constitution. We have, therefore, answered in the negative each of the questions propounded to us by the Senate.

Dated at Portland, Maine, this sixteenth day of May, 1975.

Respectfully submitted:

ARMAND A. DUFRESNE, Jr.
RANDOLPH A. WEATHERBEE
CHARLES A. POMEROY
SIDNEY W. WERNICK
JAMES P. ARCHIBALD
THOMAS E. DELAHANTY