**STATE of Maine**

v.

**Robert DUMONT.**

Supreme Judicial Court of Maine.

Argued Sept. 6, 1985.

Decided March 27, 1986.

Gene Libby, Dist. Atty., David Gregory (orally), Alfred, for plaintiff.

Eric B. Cote (orally), Saco, James Papatones, Portsmouth, N.H., for defendant.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

After a jury trial in Superior Court (York County) Robert Dumont was convicted of unlawful sexual contact, 17–A M.R.S.A. § 255(1)(C) (1983), and sentenced to three years in the Maine State Prison, with one and one-half years suspended. On appeal, he challenges the legality of the sentence, arguing that the sentencing justice deprived him of due process and the right to confrontation by considering and relying on two affidavits in the course of the sentencing proceeding. We find no error and deny the appeal.

I.

On June 4, 1984, the defendant was indicted for a single incident of unlawful sexual contact, 17–A M.R.S.A. § 255(1)(C). On December 18, 1984, after a jury trial, the defendant was found guilty of the crime charged. The central issue at trial was whether the incident occurred. The nine year-old prosecutrix testified that while attending a cook-out, the defendant, a family friend, put his hands inside her shorts and felt her "private parts." The defendant denied ever having touched the child.

On February 13, 1985, the court conducted a sentencing hearing at which the defendant and his counsel were present. The State offered three affidavits to establish aggravating circumstances in support of its sentencing recommendation. The State had provided copies of the affidavits to the defendant at some time before offering them to the sentencing justice. The defendant objected to the justice's consideration of the affidavits, stating:

The Defense certainly would agree with the proposition that it's important for the Court to inquire into the characteristics of the Defendant. However, the Defense is prepared to produce witnesses

that are here. Ready, willing and able to testify which the State is certainly able to cross-examine on her own instance. We know of no way to cross-examine affidavits. They are clearly hearsay evidence. We have no independent evidence of their reliability or authenticity and we have no way of cross-examining those affidavits.

We strongly object to the introduction of these and on that basis and further on the basis that two of these affidavits deal with allegations that have no relevance whatsoever to these particular proceedings. So the Defendant strongly does object and request that the Court rule these affidavits inadmissible.

The justice admitted two of the three affidavits, one by the prosecutrix and the other by an fourteen-year-old girl who had testified at trial. These affidavits stated that the defendant had on other occasions engaged in conduct similar to that for which he had been convicted. It is not disputed that the sentencing justice treated the affidavits as true and that they influenced his sentencing decision.

The sentencing justice addressed the defendant as follows:

Mitigating circumstances in your case are that you are a good family man, apparently, and have a nice family and very supportive family and that is to your credit. In addition, your public service. The service to your community is to your credit. And I give you credit for that.

The aggravating circumstances are the severity of the particular crime itself. First of all, the child was quite young and any time that you—a Defendant picks on a young child, that alone justifies serious punishment. Because the young child is basically defenseless and simply not equipped to handle the assault of an adult. Also the particular act you were convicted of is not the most serious unlawful sexual contact we have run across—we run across a great deal of this in this Court and as serious as it is, it is not as bad as many that we see.

However, I noticed from the affidavit of [the prosecutrix] that this is not a one-time offense. This has happened according to her affidavit over a period of years beginning when she was six years old and going on until the spring of 1984. So in other words, this was not a one-time spur of the moment unthinking act. It's a calculated act. It's a repeated act, and that makes it serious.

In addition, the other affidavit that I have allowed into evidence for sentencing purposes suggests to me that [the prosecutrix] was not the only victim of your unlawful or illegal advances. So that is a serious aggravating circumstance. The other aggravating circumstance is your lack of remorse. I realize you claim that you're innocent, but we had a jury here of twelve people who listened very carefully to the victim and listened very carefully to you and the only inference to be drawn from their verdict is that they were convinced that you were lying....

I weighed the mitigating circumstances and the aggravating circumstances that I've heard defined here and I think the aggravating circumstances somewhat outweigh the mitigating circumstances.

Therefore, I'm going to give you a prison term....

He then imposed a three year sentence with one and one-half years suspended.[1]

## II.

■ Before discussing the merits, we note that the claimed illegality in the sen-

1. For a crime committed prior to September 23, 1983, the statute authorizing split sentences, in sentencing proceedings subsequent to that date, required that the defendant consent to any unsuspended term of imprisonment in excess of 120 days. 17-A M.R.S.A. § 1203 (Supp.1984–

1985). Even though this incident occurred on August 22, 1983, the sentencing justice failed to obtain the defendant's consent. At oral argument however before this Court, the defendant consented to the split sentence imposed and does not challenge its legality on this ground.

tencing process may be raised on direct appeal. Defendant's challenge is based on the fact that the sentencing justice took into account hearsay information contained in two affidavits, in violation of his constitutional rights to confrontation and due process. As such, it constitutes an attack on the legality of the sentencing proceeding and is cognizable on direct appeal. *See State v. Farnham*, 479 A.2d 887, 889 (Me. 1984) (claim that sentencing justice increased the sentence imposed because defendant exercised his constitutional right to stand trial considered on direct appeal); *State v. Palmer*, 468 A.2d 985, 987 (Me. 1983) (challenge to sentence on constitutional grounds held cognizable on direct appeal). In addition, "the alleged infirmity, even if one of law, must appear affirmatively from the record." *State v. Farnham*, 479 A.2d at 889 (quotations omitted). Since the sentencing justice's consideration of, and reliance on, the two affidavits appear in the record, the legality of the manner in which the sentence was imposed is properly before the court on direct appeal.

### III.

The defendant argues essentially that due process requires that persons making allegations of unlawful conduct be subject to cross-examination where those allegations are offered by the State to enhance punishment.

Factual information regarding the defendant's criminal conduct for which he has not been charged may be considered by a sentencing justice in order to obtain a complete and accurate picture of the person to be sentenced. *Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1948); *United States v. Johnson*, 767 F.2d 1259, 1276 (8th Cir.1985). Due process requires, however, that such information be factually reliable. *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948); *United States v. Baylin*, 696 F.2d 1030, 1039–40 (3d Cir. 1982).

Factual reliability is assured in various ways. Information marshalled by a probation officer in a pre-sentence report is presumed to be reliable because that officer is a neutral professional who "[has] not been trained to prosecute but to aid offenders." *Williams v. New York*, 337 U.S. at 249, 69 S.Ct. at 1084; *see also Haller v. Robbins*, 409 F.2d 857, 859 (1st Cir.1969). Nevertheless, due process requires that the defendant be afforded a timely examination of the report and an opportunity to dispute any facts contained therein. *See State v. Hardy*, 489 A.2d 508, 512 (Me.1985); *see also United States v. Read*, 534 F.2d 858, 859–60 (9th Cir.1976) (sentence vacated when trial court relied on allegations of defendant's involvement in "criminal activity of a severe kind" but failed to afford the defendant opportunity to explain or refute the information); F.R.Crim.P. 32(c)(3). *See generally* ABA *Standards for Criminal Justice* Standards 18–5.4(a) (1980) ("Fundamental fairness ... requires" broad disclosure of all derogatory information "in a form sufficient to give an adequate opportunity for rebuttal.").

A sentencing justice is not limited to considering information contained in a pre-sentence report. Frequently, information is derived from first hand observation of the defendant by the sentencing justice obtained as a result of the trial process. *See United States v. Grayson*, 438 U.S. 41, 50–51, 98 S.Ct. 2610, 2615–2616, 57 L.Ed.2d 582 (1978) (permissible for sentencing judge, in fixing sentence, to give consideration to defendant's false testimony at trial); *State v. Farnham*, 479 A.2d at 891–92 (permissible for sentencing justice to give consideration to defendant's "whole course of conduct" at trial); *State v. O'Donnell*, 495 A.2d 798, 803 (Me.1985) (permissible for sentencing justice to consider trial evidence of unlawful conduct by defendant for which he has not been charged); *see also State v. Pullen*, 266 A.2d 222, 230 (Me. 1970). Such information obtained through the trial process is factually reliable because it is derived from sworn testimony of

witnesses subject to cross-examination and observation by the court.

When allegations of unlawful conduct of the defendant for which he has not been charged come before the court from sources other than a pre-sentence report or the trial process, the sentencing justice has broad discretion to determine what procedure, if any, is necessary to ensure that the allegations are factually reliable. *See State v. Small,* 411 A.2d 682, 685–86 (Me. 1980) (receipt by sentencing justice of unsolicited letter from fire inspector that included allegations of wrongdoing against defendant with sentence recommendation did not taint proceedings where judge, after making contents known to defendant, allowing cross-examination of fire inspector and refutation of letter's contents, did not consider allegations in passing sentence); *cf. United States v. Rosner,* 485 F.2d 1213, 1230 (2d Cir.1973) (decisions about appropriate procedures to ensure reliable information are largely left to the discretion of the sentencing judge), *cert. denied,* 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1974). We realize that several states have adopted blanket prohibitions against the use of any testimonial evidence at a sentencing hearing, offered to show aggravating or mitigating circumstances, unless it is offered in open court so as to provide the defendant an opportunity to cross-examine. *See, e.g.,* Cal.Penal Code § 1204 (West 1982); N.D.Cent.Code § 29–26–18 (1974); Okla.Stat.tit. 22, §§ 973–975 (1981); Or. Rev.Stat. § 137.090 (1983). Some courts, independent of legislation, have similarly barred the use of information offered by either the State or the defendant unless presented in open court. *See State v. Simms,* 131 S.C. 422, 127 S.E. 840 (1925); *State v. Rice* 145 Vt. 25, 483 A.2d 248 (1984); *State v. Maxwell,* 328 S.E.2d 506 (W.Va.1985). The ABA *Standards for Criminal Justice* in like fashion provide that any information offered by the parties should be in open court. ABA *Standards for Criminal Justice* Standard 18–6.4(b) (1980) ("The guiding principle should be provision of an effective opportunity for

both parties to rebut all allegations likely to have a significant effect on the sentence imposed."). The rationale for such a requirement is that when the sentencing proceeding deviates from its primary investigatory function and becomes accusatorial as a result of the State's attempt to show aggravating circumstances to warrant the enhancement of a sentence, fundamental fairness requires that the defendant be provided an opportunity to challenge the State's information. However impartial a prosecutor may mean to be, he is an advocate, accustomed to stating only one side of a case.

■ Although a prosecutor in offering information to the sentencing justice essentially acts in an adversarial role, it does not necessarily follow that such information is unreliable. Accordingly, we decline to adopt a *per se* rule requiring that information offered by the State or the defendant be subject to cross-examination. Such a rule would cause unnecessary delay in a sentencing proceeding and is not necessarily required to ensure that the information considered is factually reliable. The appropriate procedure to accomplish this goal in any given case should largely be left to the discretion of the sentencing justice. He is in a far better position to determine the procedures to be utilized if factual information is disputed by either party. One option would be that he not consider the disputed information; another possibility would be that he require the party offering the information to present it in open court subject to cross-examination. The guiding principle is that a sentence must be based on reliable factual information.

■ Applying these principles to the present case, we find that the justice did not abuse his discretion in considering the affidavits without furnishing to the defendant the opportunity to cross-examine the affiants. At no time did the defendant or his counsel directly dispute the accuracy or reliability of the allegations of prior unlawful conduct similar to the incidents for

which he was charged. Even at this point the defendant does not contend that the allegations are inaccurate or unreliable. The allegations were supported by factual information provided in the form of sworn affidavits. That information was neither patently unreliable nor demonstrably false and was clearly relevant as indicative of a continuing course of conduct over a substantial period of time. *See State v. O'Donnell*, 495 A.2d at 803. It thus assisted the court in making an individualized assessment of the defendant's rehabilitative prospects as well as the need to protect society.[2] In these circumstances, we find no error.

The entry is:

Judgment affirmed.

McKUSICK, C.J., and ROBERTS, VIOLETTE and WATHEN, JJ., concurring.

GLASSMAN, Justice, dissenting.

I must respectfully dissent. In my opinion the sentencing procedure conducted by the court violates article I, sections 6, 6–A and 7 of the Maine Constitution.[1] The affidavits relied on by the sentencing court accused the defendant of Class C offenses. I disagree with the court's conclusion that Maine's constitutional requirements are satisfied by Robert Dumont being given an opportunity to read the affidavits and deny their contents.

The precise novel issue before the court is: in the sentencing process can the trial court consider infamous crimes alleged to have been committed by the defendant for

which the defendant has never been charged or convicted? I believe it cannot.

The sentencing process is the culmination of a criminal prosecution. A criminal prosecution is the procedural vehicle by which an individual can legally be deprived of his liberty. To zealously enforce our constitutional safeguards throughout the procedure leading up to the deprivation of liberty and then to abandon them at that critical point, is to produce a result that clearly signals a radical defect in the system of justice.

There is little guidance afforded by statute or rule as to the form or specifics of information that can be received and considered by the court in the sentencing process. A probation officer is required by statute to "investigate any criminal case or matter referred to him [by the court] for investigation and report the result of the investigation." 34–A M.R.S.A. § 5404(1) (Supp.1984–1985). The minimum requirements of the content of a pre-sentence report are set forth in M.R.Crim.P. 32(c)(2). The only specific piece of information required by the rule is "any prior criminal record." Our previous decisions, cited by the court, do not address the issue here presented.

A Class C crime is "infamous" within the meaning of the state constitutional requirement that infamous crimes be presented by indictment. 17–A M.R.S.A. § 9 (1975).[2] Article I, section 7 of the Maine Constitution provides: "No person shall be held to answer for a[n] ... infamous crime, unless on a presentment or indictment of a grand jury.... The Legislature shall provide by law a suitable and impartial mode of select-

---

**2.** There is no suggestion that the information presented in the affidavits was used by the sentencing justice to punish the defendant for an unproven crime. *See State v. O'Donnell*, 495 A.2d at 803; *see also United States v. Grayson*, 438 U.S. at 53, 98 S.Ct. at 2617.

**1.** I do not here address the trial court's consideration of Robert Dumont's "lack of remorse" as an "aggravating circumstance" in determining the length of sentence imposed. My views in that regard remain those expressed by me in

*State v. Farnham*, 479 A.2d 887, 893–96 (Me. 1984).

**2.** 17–A M.R.S.A. § 9(1) (1983) provides:

Notwithstanding any other provision of law:

1. All proceedings for Class A, B and C crimes shall be prosecuted by indictment, unless indictment is waived, in which case prosecution may be by information.

ing juries, and their usual number and unanimity, in indictments and convictions, shall be held indispensable." [3]

For the court to have jurisdiction of the subject matter and the person necessary for the criminal prosecution of a felony, compliance with section 7 is essential. *See Low's Case,* 4 Me. 439, 452 (1827) (individual has constitutional right not to be held to answer for infamous crime on bill of indictment found by less than 12 grand jurors); M.R.Crim.P. 12.[4] When a criminal prosecution is commenced, all the safeguards of article I, section 6[5] become a constitutional right of an accused. None of these rights can be waived except by the accused. *See State v. Currier,* 409 A.2d 241 (Me.1979) (rights detailed in section 6 not conferred on his counsel but given directly to ac-

cused); *State v. Carter,* 412 A.2d 56 (Me. 1980) (accused may waive rights subject to stringent requirements).

Article I, section 6–A was added to the Declaration of Rights of the Constitution by Amendment LXXXIX, effective November 20, 1963, for the stated purpose of "a new due process clause forbidding discrimination" as a "second or repeat guarantee" of protection found in the Declaration of Rights. *See* First Report of Maine Constitutional Commission to the Legislature of the State of Maine, January 4, 1963.[6]

Long before the passage of this "second or repeat guarantee," our court addressed those "guarantees" provided in section 6 and 7. In *State v. Learned,* 47 Me. 426 (1859), in determining that an individual could not be convicted under a complaint in

---

3. The liability for punishment on conviction for a crime, rather than the punishment actually inflicted is the criterion that renders an offense infamous. *LeClair v. White,* 117 Me. 335, 104 A. 516 (1918); *State v. Vashon,* 123 Me. 412, 123 A. 511 (1924). *See also Opinion of the Justices,* 338 A.2d 802 (Me.1975).

4. The provision of 17–A M.R.S.A. § 9(1) allowing the individual to waive indictment and the court to gain jurisdiction by information provides an optional and voluntary procedure to the individual. *See* M.R.Crim.P. 7 and *Tuttle v. State,* 158 Me. 150, 180 A.2d 608 (1962), *cert. denied,* 371 U.S. 879, 83 S.Ct. 151, 9 L.Ed.2d 116, for discussion of safeguards for both the State and the individual when indictment is waived and criminal action instituted by information. *See also Ex parte Gosselin,* 141 Me. 412, 44 A.2d 882 (1946), *appeal dismissed,* 328 U.S. 817, 66 S.Ct. 982, 90 L.Ed. 1599 (whether indictment, as distinguished from complaint, is requisite to commencement of prosecution, depends on whether offense is punishable for period of one year).

5. Article I, section 6 of the Maine Constitution provides:

In all criminal prosecutions, the accused shall have a right to be heard by himself and his counsel, or either, at his election;

To demand the nature and cause of the accusation, and have a copy thereof;

To be confronted by the witnesses against him;

To have compulsory process for obtaining witnesses in his favor;

To have a speedy, public and impartial trial, and, except in trials by martial law or impeachment, by a jury of the vicinity. He shall not be compelled to furnish or give evidence against himself, nor be deprived of his life, liberty, property or privileges, but by judgment of his peers or the law of the land.

6. In January 1962, the Governor appointed a Commission to report to the 101st Legislature such changes and amendments to the Maine Constitution as appeared to be necessary or desirable. The Commission, *inter alia,* proposed as an addition to the Declaration of Rights, "a due process clause similar to that which appears as the 14th Amendment to the United States Constitution that would forbid discrimination against any person because of race, religion, sex or ancestry." *See* 2 Legis.Rec. 2919 (1963). Initially, the proposed amendment read:

No person shall be deprived of life, liberty or property without due process of law, nor be denied the enjoyment of his civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry.

The proposal appeared as L.D. 1448 in the 101st legislative session. The majority of the Committee on Constitutional Amendments and Legislative Reapportionmate reported that the bill ought not to pass. The minority of the same Committee reported that the bill ought to pass, as amended by S–275 (deleting the language "because of race, religion, sex or ancestry."). *See* 2 Legis.Rec. 2558–59. With this deletion, the proposed amendment was added to the Declaration of Rights of the Maine Constitution.

the form prescribed in an 1858 statute, the court stated:

> We do not doubt the power of the Legislature to prescribe, change or modify the forms of process and proceedings in all civil actions.... But in criminal prosecutions, the exercise of this right is limited and controlled by the paramount law in the Constitution. It has for centuries, since the declaration in the *Magna Charta*, been the boast of the common law, that it protects with jealous care the rights of the accused. It not only secures a speedy and impartial trial by jury, but it requires that no person shall be held to answer, until the accusation against him is formally, fully and precisely set forth, that he may know of what he is accused, and be prepared to meet the exact charge against him. This right of the respondent has ever been regarded as sacred and essential to the protection of the individual citizens. In all the changes of forms, and in the principles and practices of the law, this right has remained untouched and unchanged. The people have not been willing to leave it without the express sanction of the Constitution. In the Declaration of Rights, it is set down as one of the rights of the accused, "in all criminal prosecutions, to have a right to demand the nature and cause of the accusation, and have a copy thereof; and that he shall not be deprived of his life, liberty, property or privileges, but by the judgment of his peers, or the laws of the land".... This "law of the land" is not simply the existing statute law of the State, but, as has often been decided, it is the right of trial according to the process and proceedings of the common law.

*Id.* at 432, 433. *See also State v. Gurney*, 37 Me. 156, 163 (1853) and *Saco v. Wentworth*, 37 Me. 165, 176 (1853) (Legislature

has no power to impair constitutional right of trial by jury by imposing penalties on appeal from conviction).[7]

Not only have we not allowed the Legislature to infringe by statute upon these constitutional rights of an individual, we have been equally protective when the purpose of the legislation was "to legalize and make valid 'the doings' of the court in criminal cases when it had no jurisdiction." In *State v. Doherty*, 60 Me. 504 (1872), the court held the Legislature could not make legal and valid indictments returned by grand jurors impaneled and sworn by the Superior Court when that court had no criminal jurisdiction. The court stated:

> When applied to proceedings in criminal cases, the expression "due process of law," or "the law of the land," means that no person shall be deprived of life, liberty, property or privileges, without indictment or presentment by good and lawful men, selected, organized and qualified, in accordance with some pre-existing law, and a trial by a court of justice, according to the regular and established course of judicial proceedings.

*Id.* at 509.

This court, through its history of repeated assurance to the individual of the sanctity of his constitutional protections, recognizes that the Declaration of Rights is designed to exclude arbitrary power from every branch of government. We cannot assert that the legislative branch has no power to impair a right given by the Constitution and condone exclusion of the judicial branch from that prohibition.

By requiring the defendant to "answer to" charges of infamous crimes based upon affidavits, the court violates the mandate of section 7. To further require the defendant to forego a "speedy public and impartial trial" and a "judgment of his

7. In *Saco*, we also explained that "by the process and proceedings of the common law" was meant "that the accused has a right to know the charge in the whole form and substance against him, to contest it, and if not proved to the satisfaction of a jury, to demand an acquittal." *Id.* at 172.

peers," as it relates to those charges before depriving him of his liberty, violates the mandates of sections 6 and 6–A. In the guise of "obtaining a complete and accurate picture of the person to be sentenced," the court cannot justify this violent impairment of an individual's constitutional rights.[8]

I would vacate the sentence and remand the matter to the Superior Court for resentencing of the defendant.

8. I borrow the language of this court, paraphrasing to meet the issue presented: Now for courts to be solemnly resolving, and legal writers of the first eminence to be gravely stating as a matter of settled law that a right given by the Constitution belongs to the citizen untrammeled and unfettered seems to me to be very idle, to say the least of it, if we construct a fiction of the law and allow it to prevail against the truth of a constitutional right to defeat the ends of justice. *See Low's Case,* 4 Me. at 452 and *State v. Gurney,* 37 Me. at 163.