**STATE of Maine**

v.

**Donald MELVIN.**

Supreme Judicial Court of Maine.

Aug. 3, 1978.

---

Michael D. Seitzinger, Asst. Atty. Gen. (orally), Augusta, for plaintiff.

Gaston M. Dumais (orally), Lewiston, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

In separate indictments dated January 8, 1976, defendant Donald Melvin was charged in the Superior Court (Knox County) with the offenses of felonious homicide punishable as murder (17 M.R.S.A. § 2651) and assault on a prison officer (34 M.R.S.A. § 710). The indictments were consolidated for trial, and a jury found defendant guilty as charged. Defendant has appealed from the judgments of conviction entered on the jury verdict.

We deny the appeal.

The evidence justified jury findings of these facts. On November 15, 1975 while defendant was serving a sentence at the Maine State Prison in Thomaston, the following incident occurred. A prison guard, John Wyman, allowed defendant to place his food tray outside one of the prison corridors. Defendant grabbed Wyman from behind, and holding a knife with an 8 to 10 inch blade to Wyman's throat, said to Wyman: "If you make a move I'll kill you." Defendant then took Wyman's keys, locked Wyman in one of the cells and was proceeding down the corridor when Wyman heard someone scream: "No! No! Not me! I never done anything to you Melvin! Don't do it." Melvin was seen by others a short time later with blood on his hands and a wet knife, and he stated: "Well, there's one rat we won't have to worry about any more."

Prisoners Forest Hotham and Roland Pouliot, Jr. saw defendant enter a cell where Gary Lawrence was imprisoned. They heard Lawrence beg for mercy and then observed defendant walking back down the corridor with blood on his knife. Prisoner Milton Wallace saw defendant stab Gary Lawrence and noticed, too, that no one else was in the cell at the time. Gary Lawrence bled to death from multiple stab wounds in his upper left chest area and at the base of his neck.

*1.*

As a first point of appeal, defendant asserts that a discriminatory exercise of prosecutorial discretion denied him the right to a fair trial and equal protection under the law. Defendant was the only person charged with the murder of Gary Lawrence although, according to defendant, four other prisoners (Pierre Loyer, Donald Cormier, Forest Hotham and Donald Smith) could have been charged with the same offense.

Defendant first raised this contention in a motion to dismiss the indictment at the conclusion of the State's evidence. The presiding Justice then correctly indicated that the defense of discriminatory prosecution should have been raised before trial. See *State v. Heald,* Me., 382 A.2d 290, 300 (1978). He also ruled, however, that the evidence presented up to that point in the case did not support the granting of the motion to dismiss.

Although under Rule 12(b)(2) M.R. Crim.P., the failure to present before trial any defense or objection based on defects in the institution of the prosecution will result in a waiver, the Court under that rule may also grant relief from waiver. Since the presiding Justice saw fit, here, expressly to consider and rule upon the merits of defendant's motion to dismiss for discriminatory prosecution, we treat the issue as preserved for appellate review in ordinary course. See *State v. Heald,* Me., 382 A.2d 290, 300 (1978).

As to the other prisoner Forest Hotham, evidence indicated that he supplied a knife to defendant before the prison disturbance, Hotham believing that defendant wanted it only for the purpose of scaring someone.

In regard to the prisoner Donald Smith, there was evidence that he was observed carrying a knife during the prison disturbance, but the witnesses indicated that very little was seen of Smith. Milton Wallace testified that after defendant had stabbed Lawrence, Smith appeared and "seemed as shocked as I was that the man was dead."

Evidence established that the other prisoners Loyer and Cormier had participated more directly in the prison disturbance. In separate proceedings Cormier and Loyer were charged and convicted of assault on a guard. They both had knives during the disturbance, both helped to guard Wyman and both aided in the prisoner takeover of the east wing of the prison. After the stabbing, Cormier and Loyer, at defendant's instruction, "dumped" Lawrence's body off the catwalk to the floor below. At defendant's trial, Cormier testified that he alone had stabbed Lawrence, although the State on cross-examination elicited several inconsistencies in Cormier's testimony.

█ In view of all of the foregoing evidence, as well as the testimony of witnesses Wallace, Hotham, Pouliot and Wyman, we conclude that the presiding Justice was justified in rejecting defendant's claim of discriminatory enforcement or fundamental unfairness. As we indicated in *State v. Heald,* Me., 382 A.2d 290, 301 (1978):

> "The defense of discriminatory prosecution consists of two basic elements: (1) other individuals similarly situated have not been prosecuted for comparable criminal conduct, and (2) the selective enforcement was deliberately made on an impermissible and unjustifiable standard such as race, religion, a desire to discourage the exercise of one's constitutional rights or other invidious criteria."

See also *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). Here, it was rational for the presiding Justice to decide either that defendant and the other prisoners did not engage in "comparable criminal conduct" or that the prosecution of the defendant was not based on an "impermissible and unjustifiable standard." Although there was some evidence that other prisoners played some role in the killing of Gary Lawrence, the weight of the testimony established either directly or circumstantially that defendant was solely responsible for the murder of Lawrence.[1] Moreover, despite some evidence that defendant was involved in certain "political activity" in the prison, there is no evidence of any retaliatory or discriminatory motive of the prison officials or the prosecutor in the decision to charge only the defendant with the crime of felonious homicide punishable as murder.

### 2.

We reject defendant's second point of appeal, that the State must be held to have failed to prove the cause of Lawrence's death.

█ Specifically, defendant's argument is that Dr. Roberts, the only witness as to the cause of death, was not a competent witness for that purpose because he was not certified by a Board of Forensic Pathologists and was not acquainted with the factual circumstances of the case. The decision of the presiding Justice on preliminary questions of fact such as the qualifications of an expert witness and the factual foundation for opinion testimony will be set aside on appeal only for abuse of discretion. See *State v. Ifill,* Me., 349 A.2d 176, 183 (1975); *State v. Carvelle,* Me., 290 A.2d 190, 192 (1972). There was no abuse of discretion here since the evidence established that Dr. Roberts, a graduate of Tufts Medical School and a pathologist at the Penobscot Bay Medical Center, was qualified as an

---

1. In addition to the testimony already noted, Terry W. Emerson, a guard at the Maine State Prison, testified that on November 17, 1975 he was working in the segregation area, of the prison, when he overheard a conversation among defendant, Cormier and Loyer in which defendant explained to the other two prisoners that he had stabbed Lawrence.

expert to testify as to the cause of death, and his opinion as to the cause of death was based on the autopsy that he personally performed on the body of Gary Lawrence. The matters raised by defendant, therefore, at best bear on the weight to be given Dr. Roberts' testimony by the jury as fact-finder and not on the legal issues (for the court) of the competency or admissibility of that testimony as evidence.

### 3.

Defendant next contends that the State did not comply with the procedural requirements of 15 M.R.S.A. § 1314–A in granting immunity from prosecution to Forest Hotham and, hence, the court erred in granting immunity to Hotham.

The failure to comply with the requirements of 15 M.R.S.A. § 1314–A in granting immunity to a witness in a criminal proceeding does not violate any rights of the criminal defendant. The immunity statute is designed to protect a witness' privilege against self-incrimination and at the same time to obtain essential evidence in a criminal proceeding. The privilege against self-incrimination, however, is personal to the witness. *Communist Party of the United States v. Subversive Activities Control Board,* 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961); *Rogers v. United States,* 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951); *Hale v. Henkel,* 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906); *State v. Wentworth,* 65 Me. 234 (1875). Accordingly, a criminal defendant lacks standing to assert the privilege against self-incrimination of a witness against him. *Bowman v. United States,* 350 F.2d 913 (9th Cir. 1965); *United States v. Foster,* 478 F.2d 1001 (7th Cir. 1973). Moreover, the immunity statute does not grant any rights to the criminal defendant to assert a witness' privilege against self-incrimination or the right to object to noncompliance with the procedural requirements for granting immunity to a witness against the defendant.

We conclude, therefore, that defendant lacks standing to attack the grant of immunity to Forest Hotham.

### 4.

As his next point of appeal, defendant asserts that the presiding Justice erred in admitting a confession to impeach his credibility. Defendant contends that the confession was obtained in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and that the presiding Justice erred in omitting to conduct a hearing to determine whether the confession was voluntary.

The State in this case did not attempt to introduce the confession as part of its case in chief against the defendant. Instead, after defendant testified at trial and denied having killed Gary Lawrence, the State on cross-examination asked defendant whether on November 26, 1975 he stated to Dale Ames, a corporal of the Maine State Police, that he was the only person involved in killing Lawrence and that this killing stemmed from a personal matter that had occurred at the Boys Training Center. Defendant denied having made this confession. The State then called Dale Ames in rebuttal. Before Ames testified, defendant objected that the statements secured by Ames were elicited without the precaution of *Miranda* warnings. The State responded that, although the statements were elicited "without the benefit of *Miranda*", the testimony was being offered only for the purpose of impeachment under *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). The Court agreed that the testimony was admissible for impeachment only. Defendant, however, objected to this decision on the ground that the ruling in *Harris v. New York,* supra, was "unconstitutional" and that this State had never ruled on the issue. Defendant did not claim in the trial court that his confession was involuntary or lacked trustworthiness.

Ames then was allowed to testify that on November 26, 1975, he spoke to defendant in a segregation cell at the Maine State Prison. Ames indicated that he asked defendant what had happened and that defendant, after some further conversation, admitted that he had stabbed Gary Law-

rence. Ames further testified that defendant explained that he had killed Lawrence because of some dealings that he had had with Lawrence when they were both in the Boys Training Center. Defense counsel then cross-examined Ames in regard to whether Ames had given the *Miranda* warnings to defendant.

Against the background above-described, we take the posture of the issue before us to be that the presiding Justice believed it of no legal consequence that defendant's confession was elicited without affording defendant the protection of the constitutional guarantees represented by so-called *Miranda* warnings [2] where the confession was not offered for substantive purposes but only to impeach testimony given by defendant. We are called upon to decide, then, whether a court, confronting a confession which has been elicited without defendant's having the benefit of requisite *"Miranda"* protections, commits reversible error in omitting to conduct a *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), voluntariness hearing before allowing the confession to be used to impeach the credibility of the defendant.

■ At the outset of analysis, we reiterate the principle, now definitively settled, that a *Jackson v. Denno* "voluntariness" hearing is not *automatically* required before a confession may be admitted in evidence for *any* purpose. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *State v. Tanguay,* Me., 388 A.2d 913 (1978).

■ Moreover, it is this Court's view that objecting to a confession solely on the ground that the police failed to comply with *"Miranda"* safeguards is not sufficient to

preserve for review in ordinary course the separate issue of whether the confession was coerced or was in fact otherwise involuntary. *State v. Myers,* Me., 345 A.2d 500, 503 n. 2 (1975). *Wainwright v. Sykes,* supra, indicates that this approach would be approved by the Supreme Court of the United States. In *Wainwright v. Sykes* the Court strongly intimates that a *Miranda* objection and a voluntariness objection raise separate and distinct issues. In a footnote at the outset of its analysis of why the rule enunciated in *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976)—barring federal habeas corpus review in the absence of a showing of "cause" and "prejudice" in connection with a procedural default in a State proceeding—will be applicable to a waiver objection to the admission of a confession at trial, the Court says:

> "Petitioner does not argue, and we do not pause to consider, whether a bare allegation of a *Miranda* violation, without accompanying assertions going to the actual voluntariness or reliability of the confession, is a proper subject for consideration on federal habeas review, where there has been a full and fair opportunity to raise the argument in the state proceeding. See *Stone v. Powell,* 428 U.S. 465 [96 S.Ct. 3037, 49 L.Ed.2d 1067] (1976). We do not address the merits of that question because of our resolution of the case on alternative grounds." (433 U.S. 72, 87 n. 11, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594)

See also *Mincey v. Arizona,* —— U.S. ——, —— n. 12, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

---

**2.** Since the confession was offered only for impeachment, the presiding Justice did not specifically decide that it was secured in violation of *Miranda.* The parties on appeal have assumed, as the State apparently conceded at trial, that the confession was secured in violation of *Miranda.* The evidence established that on November 15, 1975, Ames first interviewed the defendant. At that time Ames gave the requisite *Miranda* warnings and defendant refused to talk. On November 26, 1975, defendant, who had been placed in a segregation cell,

asked to speak to Ames for the purpose of finding out what had been said in regard to the November 15th incident. Ames explained to defendant that this information would be available to defendant on discovery after he was charged. Ames then told defendant that defendant was the only person who could tell the truth. Ames further asked defendant if he would tell the truth. After Ames kept asking questions and after some further conversation, defendant admitted that he had stabbed Gary Lawrence.

The issue now before us, however, goes one step beyond the principles above-discussed. Here, we are proceeding on the basis not merely that a *Miranda* objection was raised but rather that a *Miranda* violation must be assumed to exist since the presiding Justice undertook no inquiry to ascertain whether it existed—the Justice's rationale being that even if a violation of *Miranda* was shown, it would be immaterial to the question of whether the confession should be admissible for purposes of impeaching the credibility of the defendant. Defendant contends that once a *Miranda* violation is taken to exist, under the decision in *Harris v. New York,* supra, this automatically triggers the necessity of a *"Jackson v. Denno"* type hearing as to whether the confession meets legal standards of trustworthiness and, therefore, the presiding Justice must conduct such an inquiry before he may permit the confession to be used to impeach the credibility of the defendant. Defendant argues further that such a trustworthiness *Jackson v. Denno* hearing would also include inquiry into the voluntariness of the confession as having potential bearing on its reliability.

We reject defendant's contention. We believe it misreads *Harris v. New York,* supra, as well as *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), which relies on *Harris.*

 Defendant is correct in saying that in both *Harris* and *Hass* the Court's holding that a confession elicited without affording defendant requisite *Miranda* protections may be used to impeach defendant is accompanied by a proviso that the "trustworthiness of the evidence satisfies legal standards." *Oregon v. Hass,* 420 U.S. at 722, 95 S.Ct. at 1221; *Harris v. New York,* 401 U.S. at 224, 91 S.Ct. 643. Moreover, we recognize that as a matter of due process of law, a confession shown by evidence to be *involuntary* may *never* be used to impeach

the credibility of a criminal defendant.[3] *Mincey v. Arizona,* —— U.S. ——, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

 From these principles it does not follow, however, that the established fact that a confession has been elicited without defendant's having been afforded requisite *Miranda* protections automatically triggers the necessity of a *"Jackson v. Denno"* type hearing as a precondition of the admissibility of the confession to impeach the credibility of the defendant. We interpret the proviso statement in *Harris v. New York* and *Oregon v. Hass* as a reminder that the proposal to use a confession for the limited purpose of impeaching defendant's credibility does not render the confession *absolutely* admissible for that purpose, such that it becomes immaterial whether the confession satisfies legal requirements as to its trustworthiness or, additionally, as to its voluntariness. Accordingly, we think it consistent with *Harris v. New York* and *Oregon v. Hass* to conclude that just as a *Miranda* violation, or the involuntariness of a confession, must be *claimed* before the presiding Justice becomes obliged to conduct a *"Jackson v. Denno"* hearing, *Wainwright v. Sykes,* supra, so, even when a *Miranda* violation appears in fact, the separate issue as to the trustworthiness of a confession, or its "voluntariness", must be generated by an independent claim specifically directed to trustworthiness, or voluntariness, before the presiding Justice has obligation to conduct a *"Jackson v. Denno"* type hearing on trustworthiness, or voluntariness, as a precondition of admitting the confession as evidence for the limited purpose of impeaching the credibility of the defendant. The *Miranda* protections being basically prophylactic in their function, the proof of a *Miranda* violation does not *automatically* trigger, or generate, the need for an independent *"Jackson v. Denno"* type inquiry into the qualitatively different sub-

**3.** The requirements of trustworthiness and voluntariness are distinct. See *Mincey v. Arizona* at ——, 98 S.Ct. 2408. Lack of trustworthiness is not the rationale requiring the exclusion of a coerced or otherwise factually established involuntary confession. See *Lego v. Twomey,*

404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *Rogers v. Richmond,* 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961); *State v. Collins,* Me., 297 A.2d 620, 634 n. 13 (1972).

stantive matters of the reliability, or the voluntariness, of the confession. Accord *State v. Washington,* 257 N.W.2d 890 (Iowa 1977); *State v. Franklin,* 281 Md. 51, 375 A.2d 1116 (1977); and *People v. Doss,* 26 Ill.App.3d 1, 324 N.E.2d 210 (1975).

Since defendant made no claim in the Superior Court specifically directed to the confession's trustworthiness, or voluntariness, but objected solely on the ground that the confession was elicited without affording defendant the benefit of requisite *"Miranda"* protections, defendant did not generate the need for the presiding Justice to conduct a *"Jackson v. Denno"* type hearing as to the trustworthiness, or voluntariness, of the confession. By this procedural default defendant has failed to preserved any voluntariness or trustworthiness issue for appellate cognizance in ordinary course. See *State v. Pomerleau,* Me., 363 A.2d 692 (1976).

We further decide on the record before us that the use of the confession to impeach the credibility of the defendant did not constitute manifest error or serious injustice. The overwhelming evidence of guilt that was independently produced by the State clearly corroborated the trustworthiness of the confession. As to the voluntariness issue, although the possibly coercive setting of the segregation cell combined with the failure to give *Miranda* warnings might have been factors having significant bearing had a *"Jackson v. Denno"* type hearing been conducted, the evidence of record in this case provides no basis sufficient to show in a manifest error-serious injustice context of appellate review that the confession was in fact other than the "product of a rational intellect and a free will." *Townsend v. Sain,* 372 U.S. 293,

307, 83 S.Ct. 745, 754, 9 L.Ed.2d 770 (1963); *Blackburn v. Alabama,* 361 U.S. 199, 208, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960).[4]

### 5.

Lastly, defendant contends that the trial Justice committed reversible error in denying defendant's request for a jury view of the State Prison.

The decision to grant or deny a request for a jury view rests in the sound discretion of the trial Justice. *State v. Heald,* Me., 333 A.2d 696, 700 (1975); *State v. York,* Me., 324 A.2d 758, 769–770 (1974); *State v. White,* Me., 285 A.2d 832, 835 (1972); *State v. McNaughton,* 132 Me. 8, 12, 164 A.2d 623, 625 (1933).

In the circumstances of this case the Justice acted within the bounds of sound discretion in denying the requested view. A number of photographs of the prison were available as evidence at the time and were introduced in evidence. As the presiding Justice noted, these photographs would enable the jury to have adequate understanding of the evidence in relation to the areas of the prison in question. Moreover, as to any additional assistance the jury might derive from an actual view of the prison, it was reasonable for the presiding Justice to have concluded that this benefit was sufficiently minor to be heavily outweighed by the special burdens involved in a jury view of the State Prison: the extraordinary precautions which would be necessary to maintain prison routine and security because of the presence of the jury as well as to ensure that the jury would not become exposed to potentially prejudicial information.

4. Defendant further argues that this Court, as a matter of State constitutional law, should reject the *Harris v. New York* impeachment exception to the *Miranda* exclusionary rule. This argument is foreclosed, however, insofar as we have already approvingly cited *Harris* in *State v. Marin,* Me., 352 A.2d 746, 748 (1976) and *State v. Myers,* Me., 345 A.2d 500, 502 (1975).

It is also important to recognized that under the Federal Constitution the *Miranda* "procedural safeguards" are "not themselves rights protected by the Constitution but were instead measures to insure that the right against compulsory self-incrimination was protected." *Michigan v. Tucker,* 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974). We have never held *solely* as a matter of State constitutional law that *Miranda* type warnings are required or that a violation of the *Miranda* safeguards requires application of an exclusionary rule. Cf. *State v. Collins,* Me., 297 A.2d 620 (1972).

The entry is:

Appeal denied.

Judgments affirmed.