**STATE of Maine**

v.

**Eugene CARTER.**

Supreme Judicial Court of Maine.

Feb. 21, 1980.

Michael D. Seitzinger (orally), Charles K. Leadbetter, Pasquale J. Perrino, Jr., Asst. Attys. Gen., Augusta, for plaintiff.

Butler & Bilodeau by William Thomas Hyde (orally), Wallace A. Bilodeau, Skowhegan, for defendant.

Before McKUSICK, C.J., and WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ.

McKUSICK, Chief Justice.

A Superior Court jury (Somerset County) convicted defendant of criminal homicide in the second degree under 17–A M.R.S.A. § 202(1)(A)(Supp.1976) as it existed on the date of the offense, July 24, 1977. Defendant was sentenced to Maine State Prison for 50 years. On appeal he principally contends that the admission in evidence of the confession he had made after his indictment and prior to the appointment of counsel violated his sixth amendment right to counsel, notwithstanding his knowing and intelligent waiver of that right prior to making the confession. We, however, reject any *per se* rule that would make inadmissible any and all post-indictment confessions made in absence of counsel. Our review of the record reveals no reversible error in the conduct of defendant's trial, and accordingly we affirm his conviction.

For the purposes of considering defendant's claims on appeal, we need only briefly summarize the evidence presented to the jury. The partially decomposed body of eighteen-year-old Catherine Ann Pooler was found on August 8, 1977, buried in a shallow grave near the riding stable area of Camp Modin in Canaan. Some two weeks before, around 9:30 p. m. on July 24, 1977, two witnesses saw defendant walking with Cathy Pooler on Route 2 in the direction of Camp Modin road, some one or two miles distant. It was the last time that Cathy Pooler was seen alive.

Another witness, Laurie Ann Vigue, testified that around ten o'clock that evening she was in the vicinity of Camp Modin with a group of young people when she heard "a girl kind of screaming like, 'You're hurting me. Stop it.'" The screams appeared to be coming from the area of the riding stable. Glenn Schwartz, an employee of Camp

Modin, testified that around 10:30 that evening he was driving a jeep on the camp road in the direction of Route 2 when he observed a young man walking toward him. The young man passed the jeep on the driver's side and his face was clearly visible in the headlights for six seconds. Schwartz gave a detailed description of the man in August, after the victim's body had been discovered, and later identified defendant as that person both out of court—on the basis of photographs, composite drawings, and a lineup—and in court at trial.

 Among the other evidence against defendant at trial were the statements [1] he made to police shortly after the body was found, admitting that he had been with Cathy Pooler on the evening in question but denying any knowledge of her death and specifically denying that he had been on the Camp Modin premises at any time that evening, in direct conflict with the later testimony of Schwartz. Finally, there was evidence of defendant's confession given both orally and in writing to Detective Parker of the Maine State Police within 24 hours of his arrest on February 23, 1978, two days after his indictment.[2]

On October 2 and 3, 1978, a hearing was held in Superior Court on defendant's suppression motions concerning both the confession and Schwartz's identification testimony. The motions were denied. The trial that immediately followed resulted in a hung jury. On November 27–30, 1978, a second trial was had, resulting in the conviction now on appeal to this court.

Defendant's principal claim of error relates to the Superior Court's denial of his motion to suppress evidence of his confession, obtained by a police detective while he was in custody after arrest on indictment but prior to arraignment. In support of this contention he argues: (1) that his confession was not "voluntary" under the due process standard of *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); (2) that he did not effectively waive his right to counsel according to the waiver standard of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); and (3) that the right to counsel, made independently applicable to him by the sixth amendment, compels *automatic* exclusion of his confession since it was made after indictment without the presence of counsel.

Turning to the circumstances surrounding defendant's confession, the evidence adduced at the suppression hearing disclosed the following chain of events. Around noontime on February 23, 1978, defendant was taken into custody and transported to the Somerset County jail. Upon booking, he was given his *Miranda* warnings, declined to waive his rights, and was taken to a cell. No further attempt to interrogate was made that afternoon, and, contrary to one of his factual contentions on appeal, there was no evidence at the suppression

---

1. The admission of those statements, elicited in a noncustodial setting during the investigation and prior to defendant's indictment, is not challenged on appeal.

2. In light of the express direction in M.R. Crim.P. 9(c)(1) that "[t]he officer executing [a warrant] shall bring the arrested person *promptly* before the court" (emphasis added), we are concerned about the delay of eleven days between defendant's arrest following indictment and his initial appearance for arraignment before the Superior Court. Cf. M.R. Crim.P. 5 (officer executing warrant issued upon complaint shall take arrested person before a magistrate "without unnecessary delay"). Absent unusual circumstances, a delay of eleven days between arrest and arraignment is unreasonably long. The explanation offered at oral argument by the Assistant Attorney General that no Superior Court justice was present in Somerset County is not such a circumstance, in light of the availability at all times of a justice of the Superior Court at the regional center in Augusta. Defendant, however, did not raise the issue of the delay at the suppression hearing and thus has not properly preserved the point for review. *Cf. State v. Stone*, Me., 397 A.2d 989, 997 n. 8 (1979). The delay in defendant's arraignment when reviewed on a "manifest injustice" standard is not a basis for reversing his conviction. The confession came early in the delay period and did not in any way result from exploitation of that delay. We have never adopted a *per se* rule of the type promulgated for the federal courts in *Mallory v. United States*, 354 U.S. 449, 453, 77 S.Ct. 1356, 1358, 1 L.Ed.2d 1479 (1957).

hearing—at which defendant himself testified—that he *at any time* specifically requested to see a lawyer. Sometime after supper, however, defendant requested to speak with Detective Parker of the Maine State Police. Parker had known defendant for some time prior to the Pooler homicide and had been involved in the investigation. Earlier that afternoon, Parker had conducted a search of defendant's camp, with the latter's consent.

The detective arrived at the county jail around 8:00 that evening and found defendant waiting for him in the sheriff's office. Defendant requested Parker to sit and talk with him, but Parker left briefly to have supper, returning at 9:00 p. m. at defendant's request. Defendant wanted to learn from Detective Parker what the police had turned up in their search of his camp. After defendant indicated that he had stolen a CB radio that was at his camp, Parker immediately gave defendant his *Miranda* warnings and ascertained that he fully understood them. Defendant then affirmatively waived his rights, indicating that he wanted to continue talking and that he did not wish to have an attorney present.

For the next few hours, Parker and defendant discussed CB radios and "CB talk" and whatever else happened to be on defendant's mind. At 12:30 a. m., Parker suggested that it was getting late and told defendant he would come back in the morning to resume their discussion, but defendant urged him to remain, pointing out that he was used to staying up all night listening to his CB radio. Their conversation at this point concerned several fights that Carter had recently gotten into, and there was no mention of the Cathy Pooler case. At 2:00 a. m. Parker again suggested that they both retire, but defendant insisted on continuing their conversation. There was a period of silence and Parker asked defendant if he would like to talk about the Cathy Pooler case, to which he responded, "Why not?"

Before asking any specific questions the detective thoroughly and cautiously readvised defendant of his *Miranda* rights, asking defendant to read them aloud from a printed form and to explain what he understood them to mean. Defendant indicated that he wanted to discuss the case with Parker and that he did not wish to have an attorney present. For roughly an hour, defendant narrated the story of his murder of Cathy Pooler, and the detective later reduced the story to writing. With two deputies present, defendant was carefully read his *Miranda* rights again, this time from the typewritten statement at the top of the page on which the confession was written. In particular, his right to have an attorney present was explained, and defendant unequivocally indicated that he wished to waive that right. The statement was then read to him word by word in the presence of the two deputies, and he signed it.

■ We affirm the correctness of the Superior Court's conclusions that Carter's confession was made voluntarily and that he knowingly and intelligently waived each of his *Miranda* rights, including the right to have an attorney present. There was no evidence of threats, intimidation, or coercion, or of deprivation of food or other basic needs. Defendant appeared neither mentally incompetent nor under the influence of drugs or alcohol. He had demonstrated his understanding of his rights by his initial refusal to waive them upon booking. Significantly, it was defendant who had initiated the interrogation session and who then insisted that Detective Parker remain to talk with him. Despite the lateness of the hour, he appeared alert and fully aware of his surroundings.

Defendant nevertheless argues that the right to counsel, made applicable here by the prior commencement of judicial proceedings against him, *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), is of such paramount importance that it may not be waived unless he has first consulted with an attorney. Any confession given before he did so should, he asserts, be held *per se* inadmissible. We disagree. Neither the sixth amendment to the federal constitution nor article I, section

6 of the state constitution requires our courts to impose such a rule.

In *Massiah v. United States*, relied upon heavily by defendant here, the Supreme Court found a violation of the defendant's sixth amendment right to counsel "when there was used against him at his trial evidence of his own incriminating words . . . deliberately elicited from him after he had been indicted and in the absence of his counsel." 377 U.S. at 206, 84 S.Ct. at 1203. That case did not, however, deal with the question whether the sixth amendment right to counsel could be validly waived. Thirteen years later, in *Brewer v. Williams*, also relied on by defendant, the Court strongly intimated that post-indictment waiver of the right to counsel is *not* impermissible *per se*. It concluded, 430 U.S. at 405–06, 97 S.Ct. at 7243:

> The Court of Appeals did not hold, nor do we, that under the circumstances of this case [the defendant] *could not*, without notice to counsel, have waived his rights under the Sixth and Fourteenth Amendments. It only held, as do we, that he did not.

(Emphasis in original) In *United States v. Monti*, 557 F.2d 899 (1st Cir. 1977), a sixth amendment case decided after *Brewer*, the First Circuit held that the right to counsel may be waived, a decision that is in accord with the overwhelming majority of federal and state courts that have considered the question. *E. g., Shreeves v. United States*, 395 A.2d 774 (D.C.App.1978), *cert. denied*, 441 U.S. 943, 99 S.Ct. 2161, 60 L.Ed.2d 1045 (1979) (interpreting *Brewer*); *Watson v. State*, 282 Md. 73, 382 A.2d 574, *cert. denied*, 437 U.S. 908, 98 S.Ct. 3100, 57 L.Ed.2d 1140 (1978) (same); *Coughlan v. United States*, 391 F.2d 371 (9th Cir.), *cert. denied*, 393 U.S. 870, 89 S.Ct. 159, 21 L.Ed.2d 139 (1968).

Under the doctrine of federal-state judicial harmony enunciated in *State v. Lafferty*, Me., 309 A.2d 647, 667 (1973) (Wernick, J., concurring), we accept the First Circuit's interpretation of the requirements of the sixth amendment. Furthermore, our analysis of federal cases interpreting the federal constitution leads to the same conclusion.

Where, as here, statements are obtained in the setting of custodial interrogation, the accused's constitutional right to counsel is adequately protected by a full panoply of procedural safeguards. At the police station, he has the benefit of being informed of his four *Miranda* rights, which include the right to assistance of counsel. *Miranda, supra* 384 U.S. at 470, 86 S.Ct. at 1625. He has the absolute "right to cut off questioning." *State v. Stone*, Me., 397 A.2d 989, 994 (1979); *State v. Capitan*, Me., 363 A.2d 221, 223 (1976). At the suppression hearing, the prosecution has the burden, by "proof beyond a reasonable doubt," *State v. Collins*, Me., 297 A.2d 620, 627 (1972), of demonstrating that any purported waiver of those rights was made "knowingly and intelligently." *Miranda, supra*, 384 U.S. at 475, 86 S.Ct. at 1628, citing *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Furthermore, the prosecution is required to establish the voluntariness of the confession under the totality of the circumstances in which it was made, *Jackson v. Denno, supra* ; and under the Maine Constitution, that voluntariness must be proved beyond a reasonable doubt. *State v. Collins, supra* at 627. *Cf. Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972) (under federal constitution, proof by a preponderance adequate).

The imposition of a *per se* rule barring a knowing and intelligent waiver in such circumstances would serve to exclude otherwise reliable confessions, while adding nothing to the objective of deterring unlawful police behavior. Furthermore, it would be inharmonious with the Supreme Court's holding in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), that a criminal defendant has the right to represent himself at his trial. If the accused may choose to undergo the ultimate determination of his guilt or innocence having waived his right to the assistance of counsel, he should not be denied that same freedom of choice—to deal with the government according to an intelligent assessment of his own best interest—at some other

stage of the proceedings. *See id.* at 834–35, 95 S.Ct. at 2540–45.

Addressing the provision in our state constitution guaranteeing "the accused . . a right to be heard by himself and his counsel, or either, at his election," Me. Const. art. I § 6 (1965), we deem it inappropriate, in light of the substantial protections afforded the right to counsel, to fashion an exclusionary rule under state law that goes beyond what is required by federal law.[3] *Cf. State v. Ann Marie C.*, Me., 407 A.2d 715, 725 (1979) (*Miranda* waiver standard for juveniles); *State v. Melvin*, Me., 390 A.2d 1024, 1032 n. 4 (1978) (impeachment exception to exclusionary rule for *Miranda* violations); *State v. Foisy*, Me., 384 A.2d 42, 44 n. 2 (1978) (fourth amendment exclusionary rule in probation revocation proceedings). *But cf. State v. Collins, supra* at 627 (State's burden of proof to establish *Miranda* waiver). Traditionally this court has not been willing to extend the *per se* application of rules of exclusion that derogate from the truth-seeking function of the criminal process. *See State v. Ballard*, Me., 385 A.2d 799, 802 n. 3 (1978) (blood alcohol results obtained pursuant to allegedly unconstitutional "implied consent" statute); *State v. Caron*, Me., 334 A.2d 495, 499 (1975) (illegally seized evidence, although suppressible at trial, admissible in probation revocation proceeding); *State v. Schoppe*, 113 Me. 10, 16, 92 A. 867, 869 (1915) (common law rule allowing admission of evidence seized in violation of fourth amendment).

■ In both *State v. Stone, supra*, and *State v. Capitan, supra*, this court rejected

a *per se* rule that would have excluded the accused's statements in circumstances where, prior to the commencement of judicial proceedings against him, the accused had initially requested to speak with a lawyer but some time later knowingly and intelligently waived that right. The procedural safeguards of *Miranda* were deemed fully adequate to protect the rights of the accused in the setting of custodial interrogation present in those cases. As this court stated in *Stone, supra* at 995:

> We see no reason to depart from the general rule, expressed in *Capitan*, as well as in [other cases cited], that the right to have counsel present, once invoked, may later be waived as long as the subsequent waiver is knowingly and voluntarily made . . . . .

It makes no difference whether that right to counsel is "invoked" by the government's need to comply with *Miranda*, as in *Stone* and *Capitan*, or by the filing of an indictment against the accused, as in the case at bar. In either situation the right may be waived, subject to the stringent requirements for an effective waiver set forth in *Johnson v. Zerbst.*[4]

■ We therefore reject the notion, advanced in *United States v. Satterfield*, 558 F.2d 655, 657 (2d Cir. 1977), quoting *United States v. Massimo*, 432 F.2d 324, 327 (2d Cir. 1970) (Friendly, J., dissenting), that the sixth amendment imposes a "higher standard with respect to waiver of the right to counsel" than do *Miranda*'s fifth amendment "procedural safeguards."[5] The waiv-

---

3. We are aware of only one state court, the New York Court of Appeals, that has imposed the *per se* exclusionary rule urged upon us here. Its decision in *People v. Settles*, 46 N.Y.2d 154, 412 N.Y.S.2d 874, 385 N.E.2d 612 (1978), is firmly grounded in a state constitutional provision that "has developed independent of its Federal counterpart . . . [and has] extended [its] protections . . . beyond those of the Federal [Constitution] well before certain Federal rights were recognized." 46 N.Y.2d at 161, 412 N.Y.S.2d at 877, 385 N.E.2d at 615.

4. A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of

whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

304 U.S. at 464, 58 S.Ct. at 1023. These requirements are expressly made applicable to the waiver of the *Miranda* rights. *Miranda v. Arizona, supra*, 384 U.S. at 475, 86 S.Ct. at 1628.

5. Although the *Miranda* "procedural safeguards" are "not themselves rights protected by the Constitution," they are nonetheless "measures to insure that the [fifth amendment] right against compulsory self-incrimination [is]

er standard is precisely the same. Consequently, the sixth amendment claim raised by defendant's pretrial motion to suppress added nothing of substance to the factual inquiry required of the Superior Court at the suppression hearing: the court's determination that defendant had effectively waived his *Miranda* rights was fully adequate to dispose of all questions of waiver arising under both the fifth and sixth amendments. Under the circumstances of this case, there was no violation of defendant's right to counsel.

 We now turn to defendant's two other claims of error. Detective Abbott of the state police testified that on the evening the victim's body was found he arranged to interview defendant the following afternoon. Arriving at the agreed upon place and time, a third person told Abbott that defendant had "gone into the woods." Upon objection, the court struck that testimony as inadmissible hearsay, admonished the jury to disregard it, but refused to grant a mistrial. Reviewing the court's denial of a mistrial for abuse of discretion, *see State v. Powers*, Me., 386 A.2d 721 (1978), we find no error. The State later elicited without objection precisely the same evidence from defendant himself on cross-examination.

Lastly, defendant challenges the admission of his *in-court* identification by witness Schwartz, while conceding that, as found by the Superior Court, the *out-of-court* identification procedures were free from constitutional defect. Defendant points to nothing beyond an alleged taint from the out-of-court identifications to render the in-court identification impermissible. As we have very recently said:

> Because the [out-of-court] photographic identification offended no constitutional requirement, its effect on the in-court identification requires no further inquiry.

*State v. Doughty*, Me., 408 A.2d 683, 687 (1979).

The entry will be:

Appeal denied.

Judgment of conviction affirmed.

protected." *Michigan v. Tucker*, 417 U.S. 433, 444, 94 S.Ct. 2357, 2364, 41 L.Ed.2d 182 (1974), quoted in *State v. Melvin*, Me., 390 A.2d 1024, 1032 n. 4 (1978).