**STATE of Maine**

v.

**Michael RICCI, Jr.**

Supreme Judicial Court of Maine.

Argued Nov. 14, 1985.

Decided April 7, 1986.

Janet T. Mills, Dist. Atty. (orally), South Paris, for plaintiff.

Hanscom & Carey, P.A., Thomas S. Carey (orally), Rumford, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

NICHOLS, Justice.

Following his conviction of gross sexual misconduct, 17–A M.R.S.A. § 253(1)(A) (1983) after a jury trial in Superior Court (Oxford County), the Defendant, Michael Ricci, Jr., appeals, contending that there was insufficient evidence that he compelled the victim to submit to sexual intercourse; that the court's jury instructions were erroneous because the test for compulsion was incorrectly stated; and because the court erroneously told the jury that absence of consent was an element of the offense; and that the court erroneously admitted testimony concerning the victim's mental abilities. We find no prejudicial error and affirm the judgment.

The 16 year-old victim and several of her schoolmates were at a friend's apartment in Rumford during the evening of September 24, 1983. The Defendant arrived later,

apparently at the invitation of the apartment occupant. Several witnesses testified that the Defendant, who was wearing a leather jacket, belonged to a motorcycle gang. The victim testified that, shortly after his arrival, the Defendant began making sexual advances toward her. Later, he took her by the arm into the bathroom, where he continued making advances. At this point, one of the victim's friends falsely informed the Defendant that the victim's mother would be arriving shortly to take the victim home. The Defendant left upon hearing this.

He returned about half an hour later and said that some friends of his were waiting outside to go to a party. The Defendant asked everybody one-by-one if they wanted to go to this party. When her turn came, the victim declined; the Defendant grabbed her by the legs, pulled her to her feet, and took her outside to his car. The victim testified that she was in the car unwillingly but that the Defendant promised to take her home. The two stopped at a convenience store, and the Defendant went inside for several minutes to buy a six-pack of beer and cigarettes for himself and the victim. The Defendant drove to a rest area in Dixfield, where he stopped, got in the back seat and told the victim to join him. She complied and the sexual encounter followed.[1] He then took her home, stopping a short distance from her house because he saw a police cruiser in the driveway.

The Defendant argues that there was insufficient evidence of compulsion.[2] He points out that the victim repeatedly testified that he never threatened her or used physical force upon her at any time during their encounter. He further asserts that any implied threat of physical force that may have existed did not amount to compulsion.

■ The words in section 251(1)(E) "produces in that person a reasonable fear" set forth a subjective-objective test, in which the magnitude of the threat is measured using the victim's mental state. *State v. Benson*, 453 A.2d 132, 134 (Me.1982). The victim must in fact fear that death, serious bodily injury, or kidnapping will occur, and that fear must be reasonable under the circumstances. *Id.* In this case the victim repeatedly testified that she was afraid of what the Defendant might do to her. It is of no consequence that the Defendant never expressly threatened her; a threat of death, serious bodily injury, or kidnapping may be implied from his conduct. *State v. Colson*, 405 A.2d 717, 720 (Me.1979). Several witnesses testified that his conduct was indeed threatening. This conduct, together with the Defendant's grabbing the victim and taking her outside, were clearly sufficient to place the victim in fear of death, serious bodily injury, or kidnapping. We conclude that the subjective prong of the section 251(1)(E) test for compulsion is satisfied.

■ The objective prong of the test is more troublesome. There was evidence at trial that the victim suffered from a minor mental disability.[3] This disability was not serious enough, by itself, to render the victim's fear unreasonable. There is no evidence that the victim was substantially incapable of appraising the nature of the Defendant's contact with her. *See* 17-A M.R.S.A. § 253(2)(C) (1983). We also reject

---

**1.** At trial the Defendant admitted having sexual intercourse with the victim but denied forcing her to leave the apartment.

**2.** 17-A M.R.S.A. § 253(1)(A) (1983), provides that a person is guilty of gross sexual misconduct if he engages in a sexual act with another person, not his spouse, and the other person submits as a result of compulsion. Compulsion is defined as:

> physical force, a threat of physical force or a combination thereof which makes a person

unable to physically repel the actor or which produces in that person a reasonable fear that death, serious bodily injury or kidnapping might be imminently inflicted upon that person or upon another human being.
17-A M.R.S.A. § 251(1)(E) (1983).

**3.** Several witnesses, including the victim's mother, testified that the victim had difficulty in school and that her responses to stressful situations were somewhat immature.

the Defendant's contention that her fear was rendered unreasonable by the opportunity for escape that existed while the Defendant was inside the convenience store. That opportunity was quite short-lived. Instead, we think that the Defendant's conduct at the apartment was sufficient to create in the victim a reasonable fear of death, serious bodily injury, or kidnapping. Furthermore, there was evidence the Defendant admitted to police that he forced the victim to submit to sexual intercourse with him. We conclude that there was sufficient evidence from which the jury could find that the State satisfied its burden under section 251(1)(E).

■ The Defendant next argues that the presiding justice incorrectly instructed the jury with regard to the subjective-objective test. The justice told the jury that:

[T]he reasonable fear, when you talk about reasonable fear, the victim in this case ... must in fact, you must find that she had that fear, the person must have the fear. And the fear must be reasonable, that is it must be a fear that a reasonable person under the same or similar circumstances would have. So that she must actually have the fear and the fear must be reasonable for her to have under the circumstances considering her age and who she is.

The only error in this instruction appears to be in the last sentence; the Defendant argues that the instruction is objectionable because it led the jury to consider the victim's mental state as part of the objective prong of the test. He contends that the victim's mental condition is a factor to be considered solely with reference to the subjective prong.

We are not persuaded that this instruction was prejudicially erroneous. The subjective-objective nature of the compulsion test is accurately set forth. The words "under the circumstances considering her age and who she is" in the last sentence did not directly suggest to this jury that the victim's mental state should be considered as part of the objective prong. We are not prepared to say that in all cases evidence of a victim's mental condition should never be assessed in considering the objective prong of the section 251(1)(E) test. The evidence suggests the victim in the present case suffered from a mental disability that was minor at worst. We conclude the challenged instruction was not prejudicial to the Defendant.

■ We next advert to the Defendant's contention that the court erred in permitting the victim's mother to testify for the State as a rebuttal witness. The State had intended for the mother to testify in its case in chief but failed to include her name on a witness list. As a discovery sanction, the Superior Court limited the State to using the mother's testimony in rebuttal. The State was further limited to using the mother's testimony to rehabilitate the victim's credibility after its impeachment by the Defendant. The Defendant presented two witnesses whose testimony was apparently intended to show that the victim did not behave as though she had been raped, thereby suggesting to the jury that her story was not worthy of their belief. The Defendant himself thus generated the issue of the victim's mental condition. The order of proof at trial is within the court's discretion. M.R.Evid. 611(a); *State v. Kingsbury*, 399 A.2d 873, 875 (Me.1979). Under the circumstances, the mother's testimony was proper rebuttal evidence, and the court committed no error in admitting it.[4]

■ The Defendant's final argument is that the court erred in instructing the jury that absence of consent by the victim was an element of gross sexual misconduct.

4. We also reject the Defendant's assertion that evidence of the victim's mental condition should not have been admitted. Her mental condition is highly relevant in determining whether the subjective prong of the compulsion test under section 251(1)(E) is satisfied. Moreover, we do not think the Defendant was prejudiced by the limited amount of evidence that was admitted concerning the victim's mental state.

Since the Defendant did not specifically object to the instruction after it was given, however, we review only for obvious error. *State v. Daley*, 440 A.2d 1053, 1055 (Me. 1982). The court instructed the jury that it had to find beyond a reasonable doubt the several "elements" of the offense, including the objectionable nonconsent element, in order to convict the Defendant. The court further told the jury that if it had a reasonable doubt as to any of the elements, its duty would be to acquit the Defendant. Whether error or not the court's instructions concerning consent could not have been so prejudicial as to have deprived the Defendant of his substantial rights.

The entry is:

Judgment affirmed.

All concurring.