**STATE of Maine**

v.

**Timothy LANGILL, Bernard Taylor & John Chiudina.**

Supreme Judicial Court of Maine.

Argued Oct. 3, 1989.
Decided Dec. 12, 1989.

David W. Crook, Dist. Atty. and Alan P. Kelley (orally), Deputy Dist. Atty., Augusta, for the State.

J. William Batten, Daviau, Jabar & Batten, Waterville, for Chiudina.

Michael J. Daly (orally), Shapiro & Daly, Gardiner, for Langill.

William Maselli (orally), Andover, for Taylor.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, HORNBY and COLLINS, JJ.

COLLINS, Justice.

Defendants Timothy Langill, Bernard Taylor and John Chiudina appeal on a variety of grounds from a jury verdict in the Superior Court (Kennebec County, *Brody, C.J.*) finding them guilty of gross sexual misconduct pursuant to 17–A M.R.S.A. § 253 (1983). We affirm their convictions.

Defendants and the victim were incarcerated in the same cell block in the Kennebec County Jail at the time of the incident. Defendants Taylor and Langill initiated the incident in the victim's cell by repeatedly hitting him. When the victim asked them to stop, defendant Taylor told the victim that they would cease striking him if he performed a sexual act upon defendant Chiudina. When the victim refused, defendant Taylor picked the victim up bodily, told defendant Langill to watch the door for guards and carried the victim into defendant Chiudina's cell. Once there the victim was forced to perform the sexual act by a combination of threats and physical force by both defendants Taylor and Chiudina.

All three defendants contend that there was insufficient evidence of compulsion to support the jury's verdict. "The standard to be applied to determine whether evidence is sufficient to support a jury's conviction is whether, based on that evidence viewed in the light most favorable to the prosecution any trier of fact rationally could find beyond a reasonable doubt every element of the offense charged." *State v. Barry*, 495 A.2d 825, 826 (Me.1985).

The statutory definition of "compulsion" includes force, threats or a combination of the two.[1] Viewed in that light, the evidence as a whole clearly supports the jury's finding that the victim was acting out of a reasonable fear of serious bodily injury. There was testimony by an uninvolved prisoner, corroborated by defendant Chiudina, characterizing the victim as an "18 year-old, scared, petrified kid." Prior to his arrival in that cell block the victim had been verbally and physically abused. Although the victim is about five feet eight inches tall and of a slight build, Langill is six feet two inches tall and 190 pounds. A guard also testified that defendant Taylor told him to have the victim moved or he would "end up getting messed up." The incident began with Taylor and Langill beating the victim. Then Taylor carried the victim bodily into Chiudina's cell and forced the victim to his knees so that his back was to the wall and defendant Chiudina was standing in front of him. The victim testified that at least at one point during the scuffle, he was "fighting to ... [his] full capacity" and was unable to get away and that he finally acquiesced because he "figured he would be beat-up pretty bad." From this evidence, the jury

---

1. "Compulsion" is statutorily defined as:
   physical force, a threat of physical force or a combination thereof which makes a person unable to physically repel the actor or which produces in that person a reasonable fear that

   death, serious bodily injury or kidnapping might be imminently inflicted upon that person or upon another human being.
   17–A M.R.S.A. § 251(1)(E) (1983).

could rationally conclude beyond a reasonable doubt that the victim did in fact fear serious bodily injury and that such fear was reasonable under the circumstances. *See State v. Ricci,* 507 A.2d 587, 588–89 (Me.1986).

■ In addition, both defendants Chiudina and Taylor argue that the prosecutor committed reversible error during closing argument. Defendant Chiudina argues that the prosecutor violated Maine Bar Rule 3.7(e)(2)(v) by asserting his personal opinion as to the credibility of the victim's testimony. Defendant Taylor contends that the prosecutor mischaracterized the victim's fear as "fear for his life." Since neither defendant preserved his claim of error at trial, the conviction must stand unless there has been obvious error causing such serious injustice to the defendant as to deprive him of a fair trial. *Walsh,* 558 A.2d at 1187; M.R.Crim.P. 52(b). In regard to defendant Chiudina's contentions, "[t]he principal concerns behind a prosecutor's expression of opinion is that, (1) it implies knowledge of information not before the jury and, (2) it places in issue the credibility of counsel, with the government holding a clear advantage." *United States v. Cresta,* 825 F.2d 538, 555 (1st Cir.1987); *State v. Walsh,* 558 A.2d 1184, 1187 (Me. 1989). However, as read in context we find the challenged excerpts to be appropriate. Furthermore, the Superior Court's proper instructions to the jury that "any statements or comments made by the lawyers in this case is [sic] not evidence" and that "you are the judges of the facts," cured any impropriety caused by the prosecutor's statements. In regard to defendant Taylor's argument, we find that the prosecutor was not guilty of mischaracterizing the victim's fear. As we discussed above, the evidence reasonably supported the conclusion that the victim did "fear for his life."

■ Defendant Taylor also contends that the trial justice's failure to grant his motion to sever was an abuse of discretion. Taylor argues that defendant Langill presented an antagonistic defense resulting in prejudice to Taylor. In general joint trials are favored in order to conserve judicial resources. "[W]here several defendants are jointly indicted they *should* be tried together, particularly where the charges against them arise out of joint acts allegedly committed by each in the presence of the other." *State v. Wing,* 294 A.2d 418, 420 (Me.1972) (quoting *United States v. Barber,* 442 F.2d 517, 529 (3d Cir.1971)) (emphasis supplied by *Wing* Court); M.R.Crim.P. 8(b). "[T]he disposition of a motion to sever is within the sound discretion of the presiding justice, and on appeal, his ruling will only be reviewed for an abuse of discretion." *State v. Johnson,* 472 A.2d 1367, 1370 (Me.1984).

We find no abuse of discretion in the case at bar. Each defendant was represented by separate counsel, and the primary defense of all three defendants was based upon a common premise that nothing happened to the victim on September 10, 1988. Defendant Langill simply had a secondary defense that, if such an incident occurred, he had not participated. Defendant Taylor has failed to make a "clear showing" of prejudice to him arising from defendant Langill's secondary defense. *State v. Johnson,* 472 A.2d at 1370.

■ In addition, defendant Taylor argues that an instruction by the trial justice prevented his counsel from making a permissible comment that the State presented no evidence regarding alleged injuries sustained by the victim. At side bar, defendant Taylor's counsel expressed his intention to comment on the lack of medical evidence. Accordingly, the trial justice properly instructed defendant's counsel that the law forbids speculative comment upon the content of an absent witness's testimony. *See State v. Brewer,* 505 A.2d 774 (Me.1985). The trial justice did not rule that defense counsel could not point out to the jury that the State presented no medical evidence. Therefore, the trial justice did not commit reversible error by his ruling.

■ Defendant Langill contends that the Grand Jury indictment charging the three defendants with gross sexual misconduct is insufficient for failure to specify the type of compulsion used.

An indictment has three constitutionally based functions:

(1) to provide the defendant with adequate notice of the charged offense so he may prepare to defend against it;

(2) to avoid unfair surprise to the defendant at trial;

(3) to protect the defendant from twice being placed in jeopardy for the same offense.

*State v. Levasseur*, 538 A.2d 764, 766 (Me. 1988).

Accordingly, the test for sufficiency of an indictment is if:

a respondent of reasonable and normal intelligence, would, by the language of the indictment, be adequately informed of the crime charged and the nature thereof in order to be able to defend and, if convicted, make use of the conviction as a basis of a plea of former jeopardy, should the occasion arise.

*State v. Weymouth*, 496 A.2d 1053, 1057 (Me.1985) (quoting *State v. Croker*, 435 A.2d 58, 68 (Me.1981)).

An indictment "must set out on its face every essential element of the crime charged"; the State cannot simply cite the appropriate statute to plead a missing element of a charged offense. *State v. Huntley*, 473 A.2d 859, 861, 863 (Me.1984). However, in the case at bar, the indictment notifies the defendant of the date, place, victim and nature of the act of which he is accused, thereby supplying all the elements of the offense charged. The statutory reference contained therein is not employed to supply a missing element of the crime charged but rather to define the supplied element of compulsion.

Therefore, while we found the indictment in *Levasseur* to be insufficient, that case is distinguishable from the one at bar. The indictment in *Levasseur* merely alleged "a sexual act as a result of compulsion," while the section 253 in effect at the time allowed for three distinct crimes of gross sexual misconduct having an element of compulsion. Under that section 253, which crime was committed depended upon the accompanying factual circumstances constituting "compulsion," each imposing different penalties. In *Levasseur* the information necessary to identify the specific crime charged was omitted. In this case, however, defendant was clearly notified of which crime under the current section 253 he was charged and what the penalty was. For similar reasons, this case is also clearly distinguishable from *State v. Pierce*, 438 A.2d 247 (Me.1981) upon which defendant Langill relies. We held that it was impossible for the defendant in *Pierce* to adequately prepare her defense, since the particular crime she would be charged with depended upon the circumstances accompanying the gross sexual misconduct she was accused of abetting. This element of the crime was not specified in the *Pierce* indictment. In the case at bar, the defendants were clearly indicted under section 253(1)(A) and were adequately notified regarding all the elements of the crime charged and the penalty to which they were exposed.

■ Defendant Langill next contends that certain admissions made by him during questioning were not voluntary nor preceded by knowing waivers of his constitutional rights. It is the State's burden to demonstrate by a preponderance of the evidence that the admissions were preceded by clear *Miranda* warnings and a waiver of those rights. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Furthermore, where involuntariness is claimed the State must prove beyond a reasonable doubt that any admissions were voluntary. *State v. Collins*, 297 A.2d 620, 627 (Me.1972). "A statement is voluntary if 'it results from the free choice of a rational mind, if it is not a product of police conduct, and if under all the circumstances its admission would be fundamentally fair.'" *State v. Curtis*, 552 A.2d 530, 532 (Me.1988) (quoting *State v. Mikulewicz*, 462 A.2d 497, 501 (Me.1983)). "The test of the admissibility of confessions is whether they were extorted from the accused by some threat or elicited by some promise ..., or were made from a willingness to tell the truth and relieve his conscience...." *State v. Smith*, 277 A.2d 481, 490 (Me.1971). However, the Law Court "will not disturb the trial court's

findings of fact supporting a suppression order unless there is *no* competent evidence in the record to support it." *State v. Addington*, 518 A.2d 449, 452 (Me.1986) (emphasis added).

We are satisfied that there was competent evidence to support the trial court's findings that the State had met its burden of proving by a preponderance of the evidence that defendant Langill's admissions were preceded by clear *Miranda* warnings and a waiver of those rights and by proof beyond a reasonable doubt that the admissions were voluntary. Although the motion justice did not explicitly state that he found the admissions to be voluntary, "the simple denial of a motion to suppress will be adequate when the record clearly shows that the ruling was in fact based on the findings of voluntariness." *State v. Smith*, 415 A.2d 553, 558 (Me.1980).

■ Defendant Langill next contends that there was insufficient evidence to support the jury's verdict finding him guilty of being an accomplice. We find that there was sufficient evidence to support the jury's verdict here. Accomplice liability is established where an individual, "[w]ith the intent of promoting or facilitating the commission of the crime, ... aids or agrees to aid or attempts to aid such other person in planning or committing the crime." 17–A M.R.S.A. § 57(3)(A) (1983). There was evidence that defendant Langill joined defendant Taylor in striking the victim prior to the incident and was present both when Defendant Taylor told the victim what he had to do to stop the beating and when Defendant Taylor carried the victim into Chiudina's cell. Furthermore, Langill himself admitted at one point that Taylor told him to watch the door for guards, and he did so. Although Langill claimed not to know why he was watching the door, Taylor ordered the victim to perform the act in a loud voice and the victim repeatedly yelled for a guard and begged to be left alone, all of which would have been audible throughout the cell block. Furthermore, Langill joined with the other two defendants in threatening the victim not to tell anybody what had occurred. Accordingly,

the evidence presented clearly supports the jury's verdict that Defendant Langill had the intent of facilitating the commission of the gross sexual misconduct and aided in its perpetration.

Defendant Langill also argues that the jury mistakenly applied a lesser standard of "knowingly" abetting the crime rather than the requisite standard for accomplice liability of "intentionally." 17–A M.R.S.A. §§ 35(1), (2) & 57(3), (4) (1983). The trial court properly instructed the jury that, in order to find defendants Taylor and Langill were accomplices, the jury must find beyond a reasonable doubt that they had intentionally promoted or facilitated the commission of the crime with a conscious object to cause the result. There was no mention of the lesser culpable state of mind of "knowingly." We find no reason in this case to waver from the assumption that "absent unusual circumstances, a jury will follow a court's instructions where the instructions are clear and the circumstances are such that the jury can reasonably be expected to follow them." *State v. Trafton*, 425 A.2d 1320, 1324 (Me.1981).

The entry is: Judgment affirmed.

All concurring.