**STATE of Maine**

v.

**Rodney WHITTEN.**

Supreme Judicial Court of Maine.

On Briefs Sept. 18, 1995.

Decided Nov. 21, 1995.

David W. Crook, District Attorney, Alan P. Kelley, Deputy District Attorney, Augusta, for the State.

Brian P. Winchester, Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

DANA, Justice.

Rodney Whitten appeals from the judgments entered in the Superior Court (Kennebec County, *Alexander, J.*) following a jury verdict finding him guilty of gross sexual assault, 17–A M.R.S.A. § 253 (Supp.1994), possession of a firearm by a felon, 15 M.R.S.A. § 393 (1980 & Supp.1994), violation of bail condition, 15 M.R.S.A. § 1092 (Supp. 1994), and assault, 17–A M.R.S.A. § 207 (1983 & Supp.1994). Whitten contends that there was insufficient evidence of compulsion to support his conviction of gross sexual assault and his sentences were illegal because the court relied on a disputed allegation contained in a letter without first establishing its reliability and disregarded the victim's recommendation as to the sentence. We affirm the convictions and vacate the sentences.

The following evidence was submitted to the jury:[1] The victim testified that she had been in an abusive relationship with Whitten. On February 3, 1993, she met Whitten at his residence to discuss their relationship. She testified that they began "fooling around," but when she told Whitten that she wanted to talk he became angry. When she attempted to leave, Whitten hit her in the face and pushed her onto the bed, causing her to hit her head. Whitten then proceeded to hold her down by her shoulders so that her chin was touching her chest, causing her to choke. The victim testified that she was afraid she was going to choke to death. Whitten, however, calmed down, they started talking, and then began kissing.

Later a physical fight ensued and Whitten tried to remove the victim's shoes and pants. She resisted by keeping her feet together and kicking him in the face. Whitten became angry. Eventually the victim removed the rest of her clothes. Whitten took her clothes away from her and put them outside of the room. The victim testified she felt hurt, afraid, and angry. Whitten later gave the victim her clothes back, allowed her to dress, and told her to get out. He then changed his mind, told her she could not leave, and again removed her clothes. They then continued talking and the victim testified that she had sexual intercourse with Whitten but she could not remember whether she was compelled. After the sexual intercourse she testified she felt nauseous.

Dr. Hermans, the victim's physician, examined the victim that same evening. She testified that while obtaining a history of events from her for the purposes of diagnosis and treatment, the victim told her she had been beaten up and forcibly raped. Dr. Hermans also described bruises and abrasions located on the victim's body and observed that the victim had been crying.

The jury found Whitten guilty on all counts and the court sentenced him to a total of 25 years incarceration followed by five years suspended and four years probation.

I. Appeal of Conviction

We reject Whitten's argument that there was insufficient evidence to permit the jury to conclude that he compelled the victim to engage in sexual intercourse. When examining the sufficiency of the evidence, we view the evidence in the light most favorable to the State to determine whether a trier of fact " 'rationally could find beyond a reasonable doubt every element of the offense charged.' " *State v. Taylor,* 661 A.2d 665, 668 (Me.1995) (quoting *State v. Barry,* 495

---

1. Since Whitten only challenges his conviction for gross sexual assault, the facts relevant to that crime are set forth.

A.2d 825, 826 (Me.1985)). To be guilty of gross sexual assault, Whitten must have compelled the victim to engage in a sexual act.[2] Compulsion is defined as "the use of physical force, a threat to use physical force or a combination thereof...." 17–A M.R.S.A. § 251(1)(E) (Supp.1994).[3]

Although there was evidence supporting Whitten's contention that the sexual act was consensual, the evidence of compulsion supporting the guilty verdict includes the following: Whitten physically abused the victim during several arguments prior to the sexual act; his abusive behavior towards the victim in the past caused her to fear Whitten when he became angry; Whitten admitted that the victim had reason to fear for her safety when he became angry; she made a statement to the police and sought medical treatment; numerous bruises were observed on her body which Whitten admitted he had caused; she was distraught; her shirt and underwear were ripped; and the victim told her doctor that she was beaten and raped and that "it was either give him sex or take a beating."

 A conviction may be based entirely on circumstantial evidence. *See State v. Benner,* 654 A.2d 435, 437 (Me.1995) (trooper's testimony of victim's demeanor and her injury supports conviction of assault even though victim denied that she had been assaulted). It was reasonable for the jury to disbelieve Whitten's contention that the sexu-

al act was consensual. " '[T]he weight of the evidence and the determination of witness credibility are the exclusive province of the jury.' " *Benner,* 654 A.2d at 437 (quoting *State v. Glover,* 594 A.2d 1086, 1088 (Me. 1991)). In reviewing the evidence in the light most favorable to the State the jury rationally could conclude beyond a reasonable doubt that the victim feared serious bodily injury, that such fear was reasonable, and that she engaged in the sexual act as a result of compulsion. *See State v. Langill,* 567 A.2d 440, 440–41 (Me.1989) (evidence that victim was verbally and physically abused supported finding that the victim acted out of reasonable fear of serious bodily injury, establishing "compulsion" supporting the conviction for gross sexual misconduct); *State v. Ricci,* 507 A.2d 587, 588 (Me.1986) (definition of compulsion sets forth subjective-objective test requiring that victim feared death, serious bodily injury, or kidnapping, and that fear was reasonable).

## II. Appeal of Sentence

 Shortly before the sentencing hearing the court received a letter from a young woman alleging that Whitten had persuaded her to engage in a sexual act with him sometime around 1987 when she was about fifteen years old.[4] Whitten, through his attorney, denied the allegation and objected to the

---

**2.** 17–A M.R.S.A. § 253(1)(A) (Supp.1994), states that: "[a] person is guilty of gross sexual assault if that person engages in a sexual act with another person and: [t]he other person submits as a result of compulsion...."

**3.** 17–A M.R.S.A. § 251(1)(E) (Supp.1994) defines compulsion as:

the use of physical force, a threat to use physical force or a combination thereof that makes a person unable to physically repel the actor or produces in that person a reasonable fear that death, serious bodily injury or kidnapping might be imminently inflicted upon that person or another human being. "Compulsion" as defined in this paragraph places no duty upon the victim to resist the actor.

**4.** In the letter the young woman wrote to the trial court she explained that during the time that Whitten had lived with her family he had persuaded her to engage in a sexual act with him. She explained that she had sexual inter-

course with Whitten "because [she] was not sure what would happen to [her] if [she] did not do what he was suggesting." She also stated in the letter that "[Whitten] also received money from [her] trust fund, that was set aside for [her] when [she] was little...."

It is unclear, however, whether the alleged sexual act was criminal conduct. In order for Whitten to have violated 17–A M.R.S.A. § 254 (Supp.1994), sexual abuse of a minor, he must have been at least five years older than the woman at the time of the act and the woman must have been under sixteen years old. The record reveals that Whitten was slightly more than five years older than the woman but there is some imprecision as to when the event occurred. The woman states in her letter that "[i]n or around the year 1987 (I was about 15 years of age) Rodney Whitten was living with me and my family...." The court, however, treated the allegation as criminal conduct and held that "allegations of uncharged sexual misconduct can be considered ... in cases involving sentencing for sexual misconduct."

court's consideration of the letter. The court, however, ruled that uncharged sexual misconduct could be considered. It is not disputed that the trial court treated the letter as factually reliable and that it influenced its sentencing decision.[5]

In reviewing a criminal sentence we consider the propriety of a sentence and the manner in which a sentence was imposed, "including the sufficiency and accuracy of the information on which it was based." 15 M.R.S.A. § 2155(2) (Supp.1994). Although a trial court generally has broad discretion in what information it considers, due process requires that the information be factually reliable. *State v. Fleming*, 644 A.2d 1034, 1036 (Me.1994) (citing *State v. Dumont*, 507 A.2d 164, 166–67 (Me.1986)). In *Dumont*, 507 A.2d at 167, we stated that:

> When allegations of unlawful conduct of the defendant for which he has not been charged come before the court from sources other than a pre-sentence report or the trial process, the sentencing justice has broad discretion to determine what procedure, if any, is necessary to ensure that the allegations are factually reliable.

In *Dumont* we declined to adopt a *per se* rule requiring that information offered by the State or defendant be subject to cross-examination. *Id.* at 167. We reasoned that if factual information is disputed the court is in a better position to determine what procedures to use to ensure its reliability. *Id.* Procedural options available to the court include, but are not limited to, presentation of the information in court subject to cross-examination or a declaration by the court that it will not consider the disputed information. *State v. Rosa*, 575 A.2d 727, 730 (Me. 1990) (citing *Dumont*, 507 A.2d at 166–67); *see State v. Small*, 411 A.2d 682, 685–86 (Me.1980) (when trial court received fire inspector's letter which included allegations of wrongdoing and sentence recommendation it allowed cross-examination of fire inspector).

Because Whitten contested the allegation, the court exceeded the bounds of its discretion and violated Whitten's right to due process by considering the letter without taking any steps to ensure its factual reliability.[6] Accordingly, we must vacate all of the sentences and remand to the Superior Court for resentencing. *See State v. Thornton*, 540 A.2d 773, 777 (Me.1988) (all sentences vacated because of their necessary interrelation).

Whitten further contends that the court failed to consider the victim's statements in imposing his sentence.[7] 17–A

---

5. The court made the following references to the information in the young woman's letter in the sentencing decision: the court indicated that Whitten had a history of "targeting, taking advantage of, and abusing vulnerable women and young girls" and stated that

> [w]hile the 1986 rape charge was pending involving a 13 year old, Mr. Whitten targeted a 15–year–old girl, whom he knew to be a victim of sexual abuse by another man, and entered into a sexual relationship with her. The sexual relationship with the 15 year old was ongoing at the same time Mr. Whitten was maintaining another sexual relationship with a 16 year old whom he later married.

In considering aggravating circumstances, the court referred to Whitten's sexual relationship with the woman when it stated that:

> [t]he primary concern must be protection of public safety from one who has repeatedly demonstrated that he will victimize women, *regardless of the law*, and even in the face of court orders and bail conditions designed to limit such victimization. That occurred in 1986 and 1987 when, after being charged with raping one young girl, he continued to sexually victimize others.

6. The present case is distinguishable from other cases because the woman's letter has no indicia of reliability. *See State v. Fleming*, 644 A.2d 1034, 1037 (Me.1994) (considering newspaper article that qualified as factually reliable material was not abuse of trial court's discretion); *State v. Rosa*, 575 A.2d 727, 731 (Me.1990) (allegation in presentence report prepared by probation officer presumed reliable); *State v. Dumont*, 507 A.2d 164, 167–68 (Me.1986) (no abuse of discretion in considering sworn affidavits of victims of uncharged crime without the opportunity to cross-examine the affiants, absent a direct challenge to the accuracy or reliability of the affidavit allegations); *State v. O'Donnell*, 495 A.2d 798, 803 (Me.1985) (trial court permitted to consider trial evidence of uncharged conduct by defendant).

7. The victim of the gross sexual assault stated at the sentencing hearing that Whitten needs rehabilitation and should be sentenced to five years incarceration because a long sentence would not be beneficial.

M.R.S.A. § 1257(2) (Supp.1994)[8] requires that the trial court consider the victim's statements. It does not, however, require the court to adopt the victim's sentence recommendation. Although the court did not follow the victim's recommendation there is no evidence that it failed to consider it.

Because we vacate all of the sentences we need not address Whitten's argument that the sentence imposed for gross sexual assault was excessive or that the imposition of consecutive sentences was illegal.

The entry is:

Judgments affirmed. Sentences vacated.

Remanded for resentencing.

All concurring.

---

**8.** 17–A § 1257(2) (Supp.1994) states in relevant part:

In any case where a defendant has been convicted of a crime and a victim of the crime is present in the courtroom at the time of sentencing, the victim upon his request shall have the right to address the court. If the victim is unable or unwilling to appear in the courtroom, he may submit a written statement to the court which shall become part of the record.... The court shall consider any statements made by the prosecutor or victim, along with all other appropriate factors, in determining the sentence.